## 51127. CHILIVIS v. STUDEBAKER WORTHINGTON, INC.

MARSHALL, Judge.

The State Revenue Commissioner appeals from a judgment in favor of the taxpayer, Studebaker Corp., allowing Studebaker to carry over and deduct on current income tax returns losses sustained by a liquidated predecessor corporation.

The facts were stipulated by the parties. In 1964, Studebaker Corp. (Old Studebaker), a Michigan corporation doing business in Georgia (and in other states) incurred a net operating loss in excess of $45 million attributable to its business of manufacturing and selling automobiles. In 1966, it sustained a net operating loss in excess of $6 million attributable to its business of manufacturing, distributing and selling plastics, garden tractors, farm implements and other items.

In 1967, Old Studebaker reincorporated in Delaware, and entered into a reorganization agreement with two Delaware corporations, Worthington (Old Worthington) and Christopher Properties. Under the agreement, several transactions occurred wherein, in essence, a new corporation was formed, Studebaker-Worthington Corp.

(S—W Corp.), under which two wholly owned subsidiaries were formed, Studebaker Corp. (New Studebaker, taxpayer herein) and Worthington Corp. (New Worthington). Old Studebaker and Old Worthington transferred substantially all their assets to the respective new subsidiaries in exchange for stock in the parent S—W Corp. The stockholders of Old Studebaker received most of the common stock of S—W Corp. and 49% of its voting power. The stockholders of Old Worthington received most of the total preferred stock of S—W Corp. and 51% of its voting power. The stock of New Studebaker and New Worthington was wholly owned by S—W Corp. After these transfers, Old Studebaker and Old Worthington were liquidated. The same business operations of both old corporations were carried on separately by the new subsidiaries. There was no mingling of the manufacturing and sales activities of the two new subsidiaries. Under the agreement, New Studebaker succeeded to all of the property rights, privileges, powers and franchises of Old Studebaker and was subject to all restrictions, disabilities, duties, debts and liabilities of Old Studebaker. The accumulated earnings and profits of Old Studebaker became the earnings and profits of New Studebaker.

The Internal Revenue Service treated the transactions as a tax-free reorganization (Type C) under I.R.C. of 1954 § 368 (a)(1)(C) (26 USCA § 368 (a)(1)(C)). The service also ruled that New Studebaker would be entitled to carry forward and deduct net operating losses incurred by Old Studebaker for Federal Income Tax purposes under I.R.C. of 1954 § 381 (26 USCA § 381).

For the tax years, 1968, 1969 and 1970, New Studebaker carried forward and deducted some of the above-mentioned losses of Old Studebaker on its Georgia income tax returns. The State Commissioner, appellant herein, disallowed the deductions and assessed deficiencies for those tax years. On appeal by the taxpayer to the Fulton County Superior Court, the trial judge, sitting without a jury found that "New Studebaker carried on the business of Old Studebaker essentially in the same manner as had Old Studebaker" and taxpayer was therefore entitled to the deduction.

Appellant contends that the trial court's holding was erroneous for two reasons: (1) the word "taxpayer," as used in the Georgia statute permitting loss carryover deductions, means the taxpayer who sustained the loss, and was not intended to mean a successor corporation; and, (2) the taxpayer in this case does not meet the requirements established by case law for allowing the loss carry-over deduction. The first argument merely asks the question answered in the cases posed in the second argument: Is the "taxpayer" who suffered the net operating loss (Old Studebaker) essentially the same "taxpayer" under the law who is seeking to carry over and deduct it (New Studebaker)? That is the only issue in this case. *Held:*

1. The law applicable to this case is Ga. L. 1931, Ex. Sess., p. 24, as amended by Ga. L. 1952, pp. 405, 428, and Ga. L. 1953, Nov. Sess. 316, 318 (Code Ann. § 92-3109 (m)(6)(B)), which provided: "Net operating loss carry-over. — If, for any taxable year ending on or after February 15, 1952, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the five succeeding taxable years ..." This Code section was repealed by Ga. L. 1971, pp. 605, 615, but was in effect during the tax years in question and was the only Georgia statute dealing with loss carry-over deductions. It was identical to a provision in the Federal Internal Revenue Code of 1939. The federal statute, which controls the issue *now,* is I.R.C. § 381, supra, of the Internal Revenue Code of 1954, and it was upon that section that the Internal Revenue Service based its determination that the loss could be carried over and deducted. However, during the tax years in question here Georgia had no statute like § 381, and for that reason we do not consider the I.R.S. ruling allowing the deduction to be controlling. Instead, as taxpayer acknowledges, the issue is controlled by the Georgia statute, Code Ann. § 92-3109 and cases interpreting same. Since there are no Georgia cases on the subject, we look to federal law and cases (to the extent that § 381 and other provisions of the I.R.C. of 1954 do not control) because of the identical nature of the 1939 federal revenue code and Code Ann. § 92-3109. See Ga. L. 1969, pp. 114, 119, as last amended by

Ga. L. 1974, pp. 554, 555 (Code Ann. § 92-3108).

The federal courts both before and after 1954, have struggled to develop some meaningful test to determine whether and under what circumstances a profitable corporation will be allowed to absorb the beneficial tax attributes of a loss suffering corporation. In an early leading case on the subject, New Colonial Ice Co. v. Helvering, 292 U. S. 435 (54 SC 788, 78 LE 1348) (1934), the Supreme Court upheld the disallowance of a loss carry-over where the assets of the loss suffering corporation were transferred to a newly created corporation in exchange for the latter's stock. The new corporation sought to offset the losses of the old corporation against its current income. The court found that the new corporation was not the same taxpayer, in spite of the fact that it carried on the same business, had the same stockholders and had substantially the same capital structure. Under this "continuity of the legal entity" rule, if the loss corporation did not emerge as the surviving corporation in the reorganization transaction, the loss could not be carried over. The case has been followed on numerous occasions. See, e.g., Shreveport Producing & Refining Co. v. Commissioner, 71 F2d 972 (1934); Standard Paving Co. v. Commissioner, 190 F2d 330 (5, 6) (1951). Departures from the "entity" rule usually involved mergers by operation of law or "statutory mergers" (Type A reorganizations under I.R.C. § 368 (a)(1)(A), supra), which are not directly involved in this case in spite of appellees' reliance on these cases. See Helvering v. Metropolitan Edison Co., 306 U. S. 522 (59 SC 634, 83 LE 957) (1939); Newmarket Mfg. Co. v. United States, 233 F2d 493 (1956); E. & J. Gallo Winery v. Commissioner, 227 F2d 699 (1955); Stanton Brewery v. Commissioner, 176 F2d 573 (1949); Koppers Co. v. United States, 134 FSupp. 290 (1955). The New Colonial Ice "entity" test remains intact today (see Rev. Ruling 59-395 (1959—1 C.B. 474)) under old code situations such as the present case, and is relied on heavily by appellant.

An additional test was pronounced by the Supreme Court in 1957 in Libson Shops, Inc. v. Koehler, 353 U. S. 382 (77 SC 990, 1 LE2d 924). In that case the taxpayer was a corporation into which 16 other corporations merged.

Prior to the merger, the 16 corporations were owned separately and operated separately as retail clothing stores. As a result of the merge the stockholders of the 16 corporations were given pro rata shares of the taxpayer in exchange for their old shares, and the taxpayer conducted the entire business as a single enterprise filing a single tax return. Three of the 16 corporations had sustained losses prior to the merger and taxpayer sought to carry these losses forward and deduct them from its post-merger income from the entire enterprise. The Supreme Court upheld the disallowance on the basis of the intent of the statutory loss carry-over provisions. "They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year. There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business." Libson, supra, p. 386. The court concluded the taxpayer was "not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses." Libson, supra, p. 390.

The resulting "continuity of business enterprise" test has been applied in many cases: Fawick Corp. v. Commissioner, 342 F2d 823 (1965); Huyler's v. Commissioner, 327 F2d 767 (1964); Commissioner v. Virginia Metal Products, Inc., 290 F2d 675 (1961); Bookwalter v. Hutchens Metal Products, Inc., 281 F2d 174 (1960); Frederick Steel Co., 42 T. C. 13; just to mention a few, all of which were decided against the taxpayer primarily on the ground that the business which generated the loss was not the same as that which produced the income to which the loss deduction was sought to be applied.

Departures from the Libson rule have been based on occasions where a continuity of ownership was shown. Thus, in Norden-Ketay Corp. v. Commissioner, 319 F2d

902 (1963), cited by appellee, the court suggests that even where there has been a complete change in the nature of the corporate activity, where there is a continuity of ownership "there might well be justice in allowing the loss carryover." See also, Jackson Oldsmobile, Inc. v. United States, 237 FSupp. 779, affd. in 371 F2d 808 (1967); Rev. Ruling 63-40 (1963—1 C.B..46). The rationale is that since the stockholders who suffered the loss are substantially the same as those who have earned subsequent income through a new corporation, the merger should not affect their right to the benefit. But see, Julius Garfinckel & Co., Inc. v. Commissioner, 335 F2d 744 (1964); Allied Central Stores, Inc. v. Commissioner, 339 F2d 503 (1964).

From these cases, there seem to be three considerations for determining deductibility of net operating losses of predecessor corporations: (1) has the legal entity of the old corporation been preserved? (2) has the business enterprise which produced the loss been continued? and (3) has there been no substantial change in the ownership? The answer to each question in this case is yes.

The corporate entity which suffered the losses, Old Studebaker, did survive the reorganization and in fact has the same name. The fact that it migrated to another state and reincorporated does not change its corporate identity. Newmarket Mfg. Co., supra; Jackson Oldsmobile, supra. Though technically Old Studebaker was liquidated and extinguished, it emerged later as a new corporation with the same separate corporate identity. It does not matter that it is now a subsidiary of another corporation; it has maintained its separate corporate identity.

The Libson test has also been met. The parties have stipulated that New Studebaker continued its business operations in substantially the same manner as they had been conducted prior to the reorganization and the trial court so found. New Studebaker's business did not become that of New Worthington and vice versa, and as far as the record shows, the parent corporation did not mingle the business operations of its two subsidiaries. Unlike Goodwill Distributors (Northern) v. Currie, 251 N. C. 120 (110 SE2d 880), relied on by appellant, New Studebaker,.

in its business enterprises did not become "a larger and more expanded business" but continued its manufacturing and sales activities at the same level. An important distinction between this case and New Colonial Ice, supra, Libson, supra, and Goodwill Distributors, supra, is that the taxpayer in those cases was the new and larger corporation, and it was the income of the expanded operations which was sought to be offset by the loss carryover. Here the income of New Studebaker was not "pooled" with other income of S—W Corporation and the tax returns in question are those of New Studebaker, not its parent, S—W Corporation. There seems to be no question that Studebaker's pre-reorganization losses included those relating its automobile manufacturing enterprise as well as other enterprises, because the appellant concedes that but for the reorganization, the losses could be carried over.

Nor has there been a substantial change in ownership insofar as the rationale of Norden-Ketay, supra, is concerned. Technically, the shareholders of Old Studebaker do not own shares of New Studebaker, but instead own shares of S—W Corporation. And the shareholders lost control over New Studebaker because of the manner of distribution of voting stock of S—W Corporation. Nevertheless, they do own New Studebaker indirectly and it cannot be said that the loss of this particular tax benefit would not be felt by the shareholders of Old Studebaker. In other words, to the extent of their ownership of S—W Corporation, they are entitled to the loss deduction, which was taken by New Studebaker. The continuity of ownership, though diminished, is nevertheless present.

We conclude that because of the continuity of Old Studebaker's corporate entity, its business enterprise and its ownership in New Studebaker, the latter is entitled to carry over and deduct the net operating losses of the former for the tax years in question.

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED SEPTEMBER 17, 1975 — DECIDED JANUARY 8, 1976 —
REHEARING DENIED JANUARY 23, 1976 — 

*Arthur K. Bolton,* Attorney General, *H. Perry Michael,* Senior Assistant Attorney General, *Lauren O. Buckland,* Assistant Attorney General, for appellant.

*Haas, Holland, Levison & Gibert, Hugh W. Gibert,* for appellee.