270 N.J. Super. 92 (1994)
636 A.2d 572
RICHARD'S AUTO CITY, INC., PLAINTIFF-APPELLANT,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1994.
Decided February 1, 1994.
*93 Before Judges SHEBELL, LONG and LANDAU.
Robert J. Kipnees, argued the cause for appellant (Greenbaum, Rowe, Smith, Ravin & Davis, attorneys; Mr. Kipnees, of counsel; Thomas C. Senter and Chrysa A. Lawson, on the brief).
Margaret A. Holland, Deputy Attorney General, argued the cause for respondent (Fred DeVesa, Acting Attorney General; Joseph L. Yannotti, Assistant General, of counsel; Ms. Holland, on the brief).
McCarter & English, submitted a brief on behalf of amici curiae, Ernst & Young; Coopers & Lybrand, and Deliotte & Touche. (Michael A. Guariglia, of counsel; Gary A. Kruse and John K. Bradley, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Since 1973, appellant, Richard's Auto City, Inc. (Auto City), an automobile dealership located on Route 9 in Freehold Township, has been a New Jersey corporation. The stock of Auto City is solely owned by Richard Catena.
Richard Catena, Inc. (Catena, Inc.) was the leasing company serving the interests of Auto City by providing financing for retail automobile customers through a leasing program offered to the public by Auto City. It was incorporated and began its business *94 operations in 1983. The stock of Catena, Inc. was also owned exclusively by Richard Catena.
On January 1, 1984, Richard Catena transferred his stock in Catena, Inc. to Auto City, making Catena, Inc. a wholly-owned subsidiary of Auto City. Catena, Inc. incurred net operating losses of $421,837 for the tax year ending December 31, 1984, $607,745 for the tax year ending December 31, 1985, and $544,712 for the tax year ending October 31, 1986.
On October 31, 1986, Catena, Inc. merged into Auto City, leaving Auto City as the surviving corporation. A certificate of merger was filed with the Secretary of State's office on December 19, 1986. The functions of Catena, Inc., were assumed by the leasing department of Auto City.
Auto City claimed as a deduction on its 1986 corporate business tax return the net operating losses incurred by Catena, Inc. during the tax years prior to the merger. These losses were incurred as a result of an accelerated depreciation method that was available at that time for leased automobiles. The parties explained the following in their stipulation of facts:
Richard Catena, Inc., as the leasing entity, experienced net operating losses prior to the merger largely due to the accelerated depreciation method then applicable to leased automobiles. Specifically, a leased automobile was subject to an accelerated depreciation schedule which resulted in the cost of the automobile being deducted in the earlier years of a lease-term prior to Richard Catena, Inc.'s receipt of all of the corresponding lease income. A substantial portion of the income from a particular lease transaction would then not be recognized until the later years of the lease-term, and/or upon sale of the automobile. Therefore, if subsequent to the merger, the pre-existing net operating losses are not able to be utilized, income from particular lease transactions would have to be realized without a corresponding offset for all of the deductions created by such transactions.
By notice of assessment, dated April 17, 1989, the Director of the Division of Taxation (Director) assessed Auto City $88,517 for taxes due. Because the losses were incurred by Catena, Inc., the Director did not allow Auto City the carryover of the net operating losses under N.J.A.C. 18:7-5.13(b). The Director assessed a penalty and interest charges, but apparently waived the penalty and abated the interest to the statutory minimum.
*95 On November 16, 1989, after review, the Director issued a final determination confirming the assessment. Auto City filed a complaint with the Tax Court contesting the Director's final determination. The parties agreed to stipulations of facts. On November 25, 1992, the Tax Court judge issued a written opinion granting the Director's cross-motion for summary judgment, denying Auto City's motion for summary judgment, and dismissing the complaint. 12 N.J. Tax 619, Auto City appeals, and we reverse and remand.
In his opinion, the judge framed the issue as "whether the net operating losses generated by one corporation for one tax year may be claimed as a legitimate corporation business tax deduction in a subsequent tax year by a second corporation after the loss-generating or first corporation has merged into the second or surviving corporation." He noted that Auto City asserted that the New Jersey Corporation Business Tax Act (CBT Act) (N.J.S.A. 54:10A-1 to -40, specifically N.J.S.A. 54:10A-4(k)(6)) allows the loss carryover deduction, but he adopted the Director's position that under N.J.A.C. 18:7-5.13(b), the deduction is not allowable.
N.J.S.A. 54:10A-4(k)(6) provides the following:
(A) Net operating loss deduction. There shall be allowed as a deduction for the taxable year the net operating loss carryover to that year.
(B) Net operating loss carryover. A net operating loss for any taxable year ending after June 30, 1984 shall be a net operating loss carryover to each of the seven years following the year of the loss....
(C) Net operating loss. For purposes of this paragraph the term "net operating loss" means the excess of the deductions over the gross income used in computing entire net income without the net operating loss deduction provided for in subparagraph (A) of this paragraph and the exclusions in paragraphs (4) and (5) of this subsection.
(D) Change in ownership. Where there is a change in 50% or more of the ownership of a corporation because of redemption or sale of stock and the corporation changes the trade or business giving rise to the loss, no net operating loss sustained before the changes may be carried over to be deducted from income earned after such changes. In addition where the facts support the premise that the corporation was acquired under any circumstances for the primary purpose of the use of its net operating loss carryover, the director may disallow the carryover.
N.J.A.C. 18:7-5.13(b) provides:

*96 The net operating loss may only be carried over by the actual corporation that sustained the loss. The net operating loss may, however, be carried over by the corporation that sustained the loss and which is the surviving corporation of a statutory merger.... Section 4(k) of the Act defines entire net income in terms of a specific corporate franchise.
[Emphasis added.]
The judge, in applying the regulation, upheld the Director's assessment, stating:
As can readily be seen, the regulation does not permit plaintiff, Richard's Auto City, Inc., the surviving corporation, to carryover and deduct the net operating losses of Richard Catena, Inc., the merged corporation. Had the merger been effected the other way around, with Richard Catena, Inc. as the surviving corporation of the statutory merger, the deduction would have been allowed.
He noted that there was nothing in the language of N.J.S.A. 54:10A-4(k)(6) that expressly allows a taxable entity to assume the tax attributes or benefits of another entity after a statutory merger.
Auto City urges that the regulation is invalid because it goes beyond the statute and expressly disallows what the statute allows. Auto City relies on N.J.S.A. 14A:10-6, which provides as part of the New Jersey Business Corporation Act (BCA) that in a merger, the surviving corporation shall "possess all the rights, privileges, powers, immunities, purposes and franchises ... of each of the merging or consolidating corporations." Auto City contends that these rights and privileges include loss carryovers, and that the regulation is irrational because it permits the loss carryover if the corporation sustaining the loss is the survivor of a merger, but denies it when the entity sustaining the loss is not the survivor of a merger.
N.J.A.C. 18:7-5.13(b), as an administrative regulation promulgated by the Director of the Division of Taxation, is subject to the following standards of judicial review:
(1) administrative rulemaking does not require specific findings of fact based on evidence adduced at public hearings; supporting factual bases are presumed until rebutted by the party attacking the administrative action;
(2) administrative regulations are accorded a presumption of reasonableness, with the burden on the attacking party to demonstrate that they are arbitrary, capricious, unduly onerous or otherwise unreasonable;

*97 (3) administrative regulations must be within the fair contemplation of the delegation of the enabling statute;
(4) the grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities; courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent;
(5) courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable.
[Sorensen v. Director, Div. of Taxation, 2 N.J. Tax 470, 474-475, 446 A.2d 213 (1981), 184 N.J. Super. 393, 397-398, 446 A.2d 213 (Tax 1981) (citing New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 384 A.2d 795 (1978)).]
The issue in this case is whether N.J.A.C. 18:7-5.13(b) is valid as consistent with N.J.S.A. 54:10A-4(k)(6). The regulation provides that "[t]he net operating loss may only be carried over by the actual corporation that sustained the loss," however, it may "be carried over by the corporation that sustained the loss and which is the surviving corporation of a statutory merger." N.J.A.C. 18:7-5.13(b).
N.J.S.A. 54:10A-4(k)(6)(D) provides the following:
Change in ownership. Where there is a change in 50% or more of the ownership of a corporation because of redemption or sale of stock and the corporation changes the trade or business giving rise to the loss, no net operating loss sustained before the changes may be carried over to be deducted from income earned after such changes. In addition where the facts support the premise that the corporation was acquired under any circumstances for the primary purpose of the use of its net operating loss carryover, the director may disallow the carryover.
N.J.S.A. 54:10A-4(k)(6) and the comparable provisions of the 1939 Internal Revenue Code, namely §§ 23(s) and 122, are similar in that both statutes define net operating losses in almost the same way, permit the carryover of these losses, and are silent as to whether these losses may be carried over in a merger or reorganization. Therefore, plaintiff argues, the tax court should have considered the pre-1954 I.R.C. cases interpreting the 1939 I.R.C. Plaintiff notes that the language and legislative history of N.J.S.A. 54:10A-4(k)(6), and the scheme of the New Jersey tax acts, evidence an intent by the Legislature to afford net operating loss carryovers at the state level the same treatment as provided at the federal level under the I.R.C. Under § 381 of the I.R.C., *98 the transferee corporation of a statutory merger may carry over the net operating losses of the transferor corporation.
Plaintiff further points out that not only are there numerous references to federal tax law in the legislative history of N.J.S.A. 54:10A-4(k)(6)[1], but there are also references to federal tax law in the state income tax statutes themselves. Specifically, our CBT, N.J.S.A. 54:10A-4(k), defines "entire net income" as the taxable income reportable to the federal government. The starting point for corporate net income before deductions is "which the taxpayer is required to report to the United States Treasury Department for the purpose of computing its federal income tax." N.J.S.A. 54:10A-4(k). Also, in N.J.A.C. 18:7-5.2(a)2(v), federal taxable income is referenced and the basis of property for purposes of calculating a corporation's CBT liability is its federal adjusted basis.
Because the limiting language of N.J.S.A. 54:10A-4(k)(6)(D) is similar to the language found in I.R.C. §§ 269 and 382, plaintiff urges that the federal tax treatment of net operating loss carry-overs was intended. Plaintiff maintains:
It is illogical to assert, as did the tax court, that even though the New Jersey Legislature incorporated limiting provisions in its net operating loss carryover statute closely resembling those contained in the Internal Revenue Code, it had no intention to grant the allowance of such net operating loss carryovers in the same manner as provided under the Internal Revenue Code.
In Helvering v. Metropolitan Edison Co., 306 U.S. 522, 523, 59 S.Ct. 634, 635, 83 L.Ed. 957, 961 (1938), the United States Supreme Court allowed a Pennsylvania corporation to deduct an unamortized bond discount of a subsidiary whose assets it had previously acquired. The Court, in analyzing the merger under the Pennsylvania merger statute, said that the "corporate personality of the transferor is drowned in that of the transferee" and the transferee would be liable for the debts of the transferor. Id., at 529, 59 S.Ct. at 638, 83 L.Ed. at 964. The Court held that as a *99 result of that, the successor corporation may deduct the unamortized bond discount. Ibid.
In Newmarket Mfg. Co. v. United States, 233 F.2d 493 (1st Cir.1956), cert. denied, 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142 (1957), Metropolitan Edison was applied in determining the availability of net operating loss carryover deductions under §§ 23(s) and 122 of the 1939 I.R.C. The court in Newmarket interpreted a statute that was not specific as to whether net operating losses could be deducted by the surviving corporation of a merger. In analyzing the applicable statute from the 1939 I.R.C., the court stated:
We refer now to the applicable statutory provisions in the 1939 Code, as amended. They furnish no explicit guidance for the problem at hand. Section 23(s) authorizes the deduction from gross income of "the net operating loss deduction computed under section 122." The cross-reference is to a long, complicated section, the effect of which may be summarized in three parts: First, § 122(a) and (d) define "net operating loss" as, roughly, an excess of business deductions over gross income in a given taxable year. Second, for the years relevant here, § 122(b)(1)(B) provides: "If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carryback for the preceding taxable year." [Italics added] Similarly, such net operating loss may be a carry-over for each of the five taxable years following the loss year, subject to certain adjustments. § 122(b)(2)(B). Third, the "net operating loss deduction" for a given year is, roughly, the sum of the carry-backs and the carry-overs to that year. § 122(c).
[Newmarket, supra, 233 F.2d at 496].
The Newmarket court interpreted Metropolitan Edison as meaning "the transferee in a statutory merger should be deemed to be continuing in itself the corporate life of the now-defunct component, and that it followed from this conceptual identity that the two corporate entities were to be treated for a substantive purpose in the income tax as the same taxpayer." Newmarket, supra, 233 F.2d at 499. The court pointed out that a carryback privilege should not be lost in a statutory merger which is merely a change in identity or form and concluded that "the principle of the Metropolitan Edison opinion should be applied to a net operating loss carry-back on the facts of the case at bar...." Id. at 498.
*100 It is not inappropriate to look to an analogous federal statute when interpreting a New Jersey statute. Galloway Township Bd. of Educ. v. Galloway Township Ass'n of Educ. Secretaries, 78 N.J. 1, 10, 393 A.2d 207 (1978). Although N.J.S.A. 54:10A-4(k)(6)(D), is not explicit, we hold that under the reasoning of Metropolitan Edison, since the successor corporation is liable for the debts, it should also be provided the tax attributes, including the net operating losses in this case, subject of course, to the limitations of subsection (D). The State's proclaimed interest in providing a non-hostile economic environment for business, as implemented by the statute, favors this result.
Citing a pre-1954 I.R.C. case, the Director argues that the United States Supreme Court has held that the loss carryover is not allowed because the corporation which sought to use the loss was not the taxpayer which sustained the loss. Libson Shops, Inc. v. Koehler, 353 U.S. 382, 387, 77 S.Ct. 990, 994, 1 L.Ed.2d 924, 928, reh'g denied, 354 U.S. 943, 77 S.Ct. 1390, 1 L.Ed.2d 1542 (1957).
In Libson, supra, the taxpayer was a corporation into which sixteen corporations, which were owned and operated separately, merged. The Court held that under §§ 23(s) and 122 of the I.R.C. of 1939, as amended, a corporation resulting from the merger of sixteen separate businesses, each of which filed separate income tax returns prior to the merger, may not carry over the pre-merger net operating losses of certain of its constituent corporations. Id. at 389, 77 S.Ct. at 990, 1 L.Ed.2d at 929.
Contrary to the Director's assertion, we find the holding in Libson to be less than helpful. The "continuity of business enterprise test" espoused in Libson, that there must be a continuity of a business enterprise before allowing pre-merger losses to be deducted, has been rejected where a continuity of ownership was shown. Chilivis v. Studebaker Worthington, Inc., 137 Ga. App. 337, 223 S.E.2d 747, 750 (1976). "The rationale is that since the stockholders who suffered the loss are substantially the same as those who have earned subsequent income through a new corporation, the merger should not affect their right to the benefit." Id. *101 223 S.E.2d at 751. Here, the stock of both Auto City and Catena, Inc. were owned solely by Richard Catena. These two corporations unlike the seventeen in Libson, filed consolidated tax returns in the relevant years prior to the merger.
Plaintiff cites cases from other states that also had statutes that did not specifically address the treatment of such carryovers in mergers. These states chose to apply federal cases interpreting the pre-1954 I.R.C. which was similar to their state statute. State Tax Comm'n of Arizona v. Oliver's Laundry & Dry Cleaning, 19 Ariz. App. 442, 508 P.2d 107 (1973); Bracy Dev. Co. v. Milam, 252 Ark. 268, 478 S.W.2d 765 (1972); Chilivis v. Studebaker Worthington, Inc., 137 Ga. App. 337, 223 S.E.2d 747 (1976); Fieldcrest Mills, Inc. v. Coble, 290 N.C. 586, 227 S.E.2d 562 (1976); Tiffany-Davis Drug Co. v. Department of Revenue, 255 Or. 279, 465 P.2d 878 (1970).
Under these authorities, when a state net operating loss carry over deduction statute is patterned after the 1939 I.R.C., the court may look to federal cases interpreting the analogous federal deduction. Metropolitan Edison and Newmarket, supra, support plaintiff's contention that under N.J.S.A. 54:10A-4(k)(6), it is entitled to deduct the net operating losses of its predecessor corporation, and they should be looked to when interpreting our statute.
This interpretation is consistent with N.J.S.A. 14A:10-6 of the BCA, which provides that in a merger:
Such surviving or new corporation shall, to the extent consistent with its certificate of incorporation as amended or established by the merger or consolidation, possess all the rights, privileges, powers, immunities, purposes and franchises, both public and private, of each of the merging or consolidating corporations.

[N.J.S.A. 14A:10-6(c) (emphasis added).]
Under that statute, the surviving corporation is also "liable for all the obligations and liabilities of each of the corporations so merged or consolidated...." N.J.S.A. 14A:10-6(e).
N.J.S.A. 14A:10-6 is akin to the holding of Metropolitan Edison. Thus, the corporate personality of the transferor is consumed *102 by that of the transferee and the transferee is liable for the debts of the transferor. Metropolitan Edison, supra, 306 U.S. at 529, 59 S.Ct. at 638, 83 L.Ed. at 964. Therefore, it is not unreasonable to conclude that the tax attributes of the predecessor corporation actually become the tax attributes of the surviving corporation. Because Catena, Inc. merged with Auto City, Auto City inherited the obligations and liabilities of Catena, Inc. (N.J.S.A. 14A:10-6(e)) and should also inherit the rights and privileges, such as the tax attributes. N.J.S.A. 14A:10-6(c).
The Tax Court judge's reliance on the holding in Fall River Canning Co. v. Wisconsin Dep't of Taxation, 3 Wis.2d 632, 89 N.W.2d 203 (1958) is not justified. The merger statute in that case was similar to New Jersey's in that it gave the rights and privileges of the predecessor to the surviving corporation. Id. 89 N.W.2d at 204-205. However, as plaintiff correctly points out, there, the net operating loss statute, unlike N.J.S.A. 54:10A-4(k)(6), did specifically address the net operating loss deduction to the taxpayer that sustained the loss. Id. 89 N.W.2d at 204. N.J.S.A. 54:10A-4(k)(6) is not specific and does not address under what circumstances the loss may be deducted.
N.J.S.A. 54:10A-4(k)(6) is silent as to whether a surviving corporation in a merger may deduct the net operating losses incurred by the merged corporation prior to the merger. Under N.J.S.A. 14A:10-6(c) of the BCA, in a merger, the surviving corporation inherits the rights and privileges of the predecessor corporation. We agree with plaintiff that it follows that the tax attributes of the predecessor corporation are inherited by the surviving corporation, subject to the "primary purpose" limitation of subsection (D).
There was no change in the trade or business of Catena, Inc. Further, there is nothing in the record to indicate that the primary purpose of the merger was to permit Auto City to use the net operating losses of Catena, Inc. The situation is not one of abuse wherein N.J.S.A. 54:10A-4(k)(6)(D) seeks to disallow the deduction.
*103 According to the Office of the Governor News Release, dated April 22, 1985, the public policy underlying N.J.S.A. 54:10A-4(k)(6) was to put New Jersey in a better competitive position with neighboring states and to provide relief from difficulties arising when businesses seek to expand. Although the statute does not specifically state that in this situation net operating loss carry-overs must be allowed, the stated purpose of the statute and the intent of the Legislature are more consistent with our interpretation of subsection (D).
We are convinced that N.J.A.C. 18:7-5.13(b), in broadly providing that in a merger, net operating loss carryovers be disallowed where the surviving corporation is not the one that generated the net operating losses, goes beyond the legislative scheme and imposes a restriction that is neither intended nor authorized. The regulation, N.J.A.C. 18:7-5.13(b), unduly expands the limiting aspects of subsection (D). Without express power, the Director imposed an independent restriction on the deductions allowed by the general provisions of N.J.S.A. 54:10A-4(k)(6). We find no express or implied delegation of such authority in the statute.
Our Supreme Court has recently addressed agency regulations promulgated by the Director of the Division of Taxation in GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 625 A.2d 468 (1993). The Court held that although agency regulations are presumptively valid and should not be invalidated unless they violate the enabling statute or its legislative policies, "an administrative agency may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits." Id. at 306, 625 A.2d 468 (citations omitted). The Court also stated, "[w]ith due deference to an agency's interpretation of a statute, we cannot ignore the abundantly clear purpose of that statute." Id. at 314, 625 A.2d 468 (citation omitted).
We find the Director's argument that the carryover provision does not apply to a merged corporation because the corporation that incurred the loss is no longer in existence to be unconvincing, *104 as it fails to recognize the policy considerations underlying the issue and instead takes a mechanical approach to the problem which renders meaningless the "primary purpose" restriction of subsection (D). The substance of the merged corporation continues within the surviving corporation. "In tax matters it is acutely true that the substance prevails over the form of things." Tilney v. Kingsley, 43 N.J. 289, 298, 204 A.2d 133 (1964). "When interpretation of a tax statute is in doubt, the court should construe the statute in favor of the taxpayer if there is no pertinent legislative history to guide the interpretation." Nine Franklin Corp. v. Division of Taxation, 13 N.J. Tax 121, 129 (1993) (citing Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 384-385, 476 A.2d 741 (1984)).
Here, the statute allows for a deduction for net operating losses. N.J.S.A. 54:10A-4(k)(6)(A), (B), and (C). Under subsection (D), the limiting section, this deduction is prohibited if the corporation changes the trade or business giving rise to the loss or if the corporation was acquired for the "primary purpose" of using the net operating loss carryover. While the statute does not specifically state that the surviving corporation in a merger may deduct the net operating losses of the merged company, it can be inferred by the language of the statute. Especially in view of the second limiting provision which prohibits the deduction if the corporation was only acquired for the purpose of using the deduction. The implication is that the deduction is allowable if the acquired corporation were not acquired as a bona fide business transaction.
The regulation, N.J.A.C. 18:7-5.13(b), which states that only the corporation that sustained the loss may carryover the net operating loss, is not in keeping with the intent of the statute. The Director's promulgation of this regulation was "arbitrary, capricious, unduly onerous," and unreasonable. Sorensen v. Director, Div. of Taxation, 184 N.J. Super. 393, 398, 2 N.J. Tax 470, 474-475, 446 A.2d 213 (1981) (citing New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 384 A.2d 795 (1978)). The regulation is not "within the fair contemplation of the delegation of *105 the enabling statute...." Ibid.; see also GE Solid State, Inc. v. Director, Division of Taxation, 132 N.J. 298, 625 A.2d 468 (1993).
Therefore, the grant of summary judgment to the Director of the Division of Taxation is reversed. We remand to the Tax Court for entry of judgment in favor of plaintiff in accordance with this opinion.
NOTES
[1] Plaintiff cites State of New Jersey Assembly Committee's Substitute for Assembly, Nos. 165, 264, 587, 2144 and 2243, February 25, 1985.