659 A.2d 1360

RICHARD'S AUTO CITY, INC., PLAINTIFF–RESPONDENT,
v. DIRECTOR, DIVISION OF TAXATION,
DEFENDANT–APPELLANT.

Argued January 17, 1995—Decided June 21, 1995.

524

526

*Margaret A. Holland,* Deputy Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

*Robert J. Kipnees* argued the cause for respondent (*Greenbaum, Rowe, Smith, Ravin & Davis,* attorneys; *Mr. Kipnees* and *Thomas C. Senter,* of counsel and on the brief).

*Michael A. Guariglia* submitted a letter brief on behalf of *amici curiae* Ernst & Young, Coopers & Lybrand and Deloitte & Touche (*McCarter & English,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This appeal involves a conflict over the interpretation of provisions of the Corporation Business Tax Act that permit certain net-operating losses to be carried over and deducted in successive tax years. Specifically, at issue is whether those provisions permit the net-operating losses incurred in past tax years by a corporation that has been merged into a successor corporation to be carried over and deducted by the surviving corporation in a subsequent tax year.

In this case, the Director of the Division of Taxation disallowed the deduction by the surviving corporation because the losses had not actually been incurred by its business operations, but rather the losses were sustained by the merged corporation, which was no longer in existence. The Director's determination was based on an administrative regulation that was adopted to implement the net-operating loss carryover provisions of the tax statute. The issue involving the proper interpretation of the statute, therefore, necessarily involves the validity of the administrative regulation.

I

Richard's Auto City, Inc. ("Auto City"), a New Jersey corporation formed in 1973, sells automobiles from its dealership in Freehold Township. Catena, Inc. ("Catena") was the leasing company affiliated with Auto City, providing lease financing for Auto City's customers. Catena was incorporated and began operations in 1983, working from the same location as Auto City. Richard Catena was the sole stockholder of each corporation. In January 1984, Richard Catena transferred 100% of his shares in Catena to Auto City, making Catena a wholly-owned subsidiary of Auto City.

During the next several years, Catena incurred substantial net-operating losses, totaling $1,574,294 for the tax years ending December 31, 1984, December 31, 1985, and, October 31, 1986. Those losses were attributable primarily to the accelerated depreciation method then applicable to leased automobiles. Under the applicable depreciation schedule, in the earlier years of the lease terms, Catena deducted the cost of the leased automobiles prior to the receipt of all the corresponding lease income. Catena did not realize a substantial portion of the income from lease packages until the later years of the lease terms and/or the eventual sale of the automobiles. As a result, Catena sustained large net-operating losses during 1984, 1985, and 1986.

Pursuant to a plan of merger adopted on October 31, 1986, Catena merged into Auto City. A Certificate of Merger filed with the Secretary of State on December 19, 1986 identified Auto City as the survivor corporation. Following the merger, the leasing programs that Catena previously offered continued in the same manner under Auto City's leasing department.

On its 1986 Corporate Business Tax Return, Auto City claimed as a deduction the net-operating losses Catena had incurred as a result of depreciation during the tax years prior to the merger. By notice of assessment dated April 17, 1989, the Director of the Division of Taxation disallowed the deduction and assessed Auto City $88,517 in additional taxes. Further, the Director imposed a $4,426 late payment penalty and $43,643 in interest charges through November 30, 1989. That decision was reaffirmed by a final determination letter dated November 16, 1989, which reduced the penalty and interest to the statutory minimum.

Auto City filed a complaint with the Tax Court contesting the Director's final determination. Both parties stipulated to the foregoing facts. The Tax Court granted the Director's cross-motion for summary judgment, and dismissed Auto City's complaint. 12 *N.J.Tax* 619 (1992). The Appellate Division reversed the Tax Court's determination and remanded the matter to the Tax Court for entry of judgment in favor of Auto City. 270

*N.J.Super.* 92, 636 *A.*2d 572 (1994). The Director filed a petition for certification, which this Court granted. 137 *N.J.* 167, 644 *A.*2d 614 (1994).

## II

This case focuses on the proper interpretation and application of provisions in the Corporation Business Tax Act ("CBT") for the carryover and deduction of net-operating losses ("NOLs"). Those provisions, *N.J.S.A.* 54:10A–4(k), state:

(6)(A) Net operating loss deduction. There shall be allowed as a deduction for the taxable year the net operating loss carryover to that year.

(B) Net operating loss carryover. A net operating loss for any taxable year ending after June 30, 1984 shall be a net operating loss carryover to each of the seven years following the year of the loss. The entire amount of the net operating loss for any taxable year (the "loss year") shall be carried to the earliest of the taxable years to which the loss may be carried. The portion of the loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of the loss over the sum of the entire net income, computed without the exclusions permitted in paragraphs (4) and (5) of this subsection or the net operating loss deduction provided by subparagraph (A) of this paragraph, for each of the prior taxable years to which the loss may be carried.

(C) Net operating loss. For purposes of this paragraph the term "net operating loss" means the excess of the deductions over the gross income used in computing entire net income without the net operating loss deduction provided for in subparagraph (A) of this paragraph and the exclusions in paragraphs (4) and (5) of this subsection.

(D) Change in ownership. Where there is a change in 50% or more of the ownership of a corporation because of redemption or sale of stock and the corporation changes the trade or business giving rise to the loss, no net operating loss sustained before the changes may be carried over to be deducted from income earned after such changes. In addition where the facts support the premise that the corporation was acquired under any circumstances for the primary purpose of the use of its net operating loss carryover, the director may disallow the carryover.

Following the Legislature's enactment of those provisions in 1985, the Director adopted *N.J.A.C.* 18:7–5.13(b), effective February 3, 1986, to implement *N.J.S.A.* 54:10A–4(k)(6). The regulation provides:

(b) The net operating loss may only be carried over by the actual corporation that sustained the loss. The net operating loss may, however, be carried over by the corporation that sustained the loss and which is the surviving corporation of a statutory merger. The net operating loss may not be carried over by a taxpayer

that changes its state of incorporation or is a part of a statutory consolidation. Section 4(k) of the [CBT] Act defines entire net income in terms of a specific corporate franchise.

The dispute between the parties centers on the Director's regulation and its restriction of the net-operating loss deduction to the corporation that actually sustained that loss and whether that regulation expresses the authority intended to be conferred by the enabling statute. Because the issue of statutory interpretation implicates the validity of the Director's regulation, our resolution properly commences with the standards governing judicial review of administrative regulations.

This Court has stated,

Agency regulations are presumptively valid and should not be invalidated unless they violate the enabling act or its express or implied legislative policies. Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.

[*GE Solid State, Inc. v. Director, Div. of Taxation,* 132 *N.J.* 298, 306[, 625 *A.*2d 468] (1993) (citations omitted).]

■ The standard of judicial review of regulations acknowledges the very broad grant of authority to administrative agencies for the purpose of adopting regulations. *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 560–63, 384 *A.*2d 795 (1978). That standard is fully applicable to administrative regulations governing taxation. *See Sorensen v. Director, Div. of Taxation,* 184 *N.J.Super.* 393, 2 *N.J.Tax* 470, 446 *A.*2d 213 (1981). We thus accept the strong presumption in favor of the validity of the Director's regulation, but recognize, nonetheless, that

an administrative agency may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits. Accordingly, we have invalidated regulations that flout the statutory language and undermine the intent of the Legislature.

[*GE Solid State, supra,* 132 *N.J.* at 306–07 [625 *A.*2d 468] (citations omitted).]

The Appellate Division determined that the Director's regulation, *N.J.A.C.* 18:7–5.13(b), was invalid because it was inconsistent with the enabling statute; it "goes beyond the legislative scheme and imposes a restriction that is neither intended nor authorized."

270 *N.J.Super.* at 103, 636 *A.*2d 572. The Tax Court reached the opposite conclusion. 12 *N.J.Tax* at 640–42.

■ In the enterprise of statutory construction, the first step is the examination of the provisions of the legislative enactment to ascertain whether they are expressed in plain language that, in accordance with ordinary meaning, clearly and unambiguously yields only one interpretation. *GE Solid State, supra,* 132 *N.J.* at 307, 625 *A.*2d 468 (citations omitted).

■ What is obvious from the examination of the tax statute in this case is that the language of its critical provisions is not clear and unambiguous; it does not admit of only one interpretation; and it does not plainly authorize a surviving corporation in a merger to use the NOL deductions of an acquired corporation.

■ *N.J.S.A.* 54:10A–4(k)(6)(D) prohibits NOL deductions

■ where there is a change in 50% or more of the ownership of a corporation because of redemption or sale of stock and the corporation changes the trade or business giving rise to the loss ... [and]

■ where the facts support the premise that the corporation was acquired under any circumstances for the primary purpose of the use of its net operating loss carryover.

The "changes in ownership" specified in the statute do not include those effectuated through mergers. *N.J.S.A.* 54:10A–4(k)(6), by its express terms, does not address the treatment of NOLs in mergers and other corporate reorganizations.

Auto City asserts that the language of *N.J.S.A.* 54:10A–4(k)(6)(D) implicitly authorizes net-operating loss carryovers by a surviving corporation in merger situations in that it expressly bars an NOL deduction in only two situations, and those do not involve a corporate merger. Therefore, it is claimed that, by implication, the NOL carryover deduction is permitted in the case of a corporate merger because it is not expressly prohibited.

That position, however, fails to take into account the broader statutory context in which the NOL provisions of the CBT must be assessed and fails to appreciate the overall intendment of the CBT as one that applies to single corporate taxpayers. The CBT

does not recognize generally the financial status or condition of any entity other than the individual corporate taxpayer. Judge Andrew, thus, observed:

> [T]he CBT act is a tax on a single entity and that concept is reflected in *N.J.S.A.* 54:10A–4 which defines "entire net income" in terms of a single "taxpayer's entire net income." That is also reflected in the fact that consolidated tax returns have never been permitted under the CBT act. *See N.J.A.C.* 18:7–4.15, –11.15; *United States Steel Corp. v. Director, Div. of Tax.,* 38 *N.J.* 533[, 186 A.2d 266] (1962).
> [12 *N.J.Tax* at 628.]

The flaw in Auto City's position is that it would, in effect, give tax recognition to the losses of a non-taxpayer corporation. "There is nothing," however, "in the provisions granting the net loss carryovers that permits ":one taxable entity" to assume the tax deductions "of another entity after a statutory merger." *Ibid.* The Tax Court noted that *N.J.S.A.* 54:10A–4(k)(6)(A) and (B), "simply permit net-operating loss carryovers," and that the carryover deduction "is limited to a single taxpaying entity unless the authorizing statute expressly and clearly extends the tax deduction to multiple corporations. It does not." *Id.* at 636. It has long been understood that the corporation franchise tax does not accommodate a non-taxpayer corporation. *See Household Finance Corp. v. Director of Div. of Taxation,* 36 *N.J.* 353, 362, 177 *A.2d* 738 (1962) (disallowing under Financial Business Tax Act (repealed), which paralleled Corporation Franchise Tax Act (repealed), claim of corporate taxpayer to tax benefits derived from the financial condition of its wholly-owned subsidiaries).

The Director's regulation comports with this basic meaning of the CBT. It recognizes that "Section 4(k) of the [CBT] defines entire net income in terms of a specific corporate franchise." *N.J.A.C.* 18:7–5.13(b). Nothing in the language of the CBT, more specifically in *N.J.S.A.* 54:10A–4(k)(6), permits one taxable entity to adopt the tax attributes of another entity after a statutory merger. The language of the statute does not support the imputation of a legislative intent or the implication of statutory authority that would allow the transfer of tax deductions from an acquired corporation to the surviving corporation after a merger.

■ Auto City further cites legislative history as support for its position. We acknowledge that in determining the meaning to be accorded the terms of a statute, "legislative purpose is the key to the interpretation of any statute." *GE Solid State, supra,* 132 *N.J.* at 308, 625 *A.*2d 468; *see Donnelley Corp. v. Director, Div. of Taxation,* 128 *N.J.* 218, 227, 607 *A.*2d 1281 (1992). The "examination of the overall policy and purpose of the statute provides additional assistance in its correct interpretation. The construction that will best effectuate the statute's ultimate objectives is to be preferred." *Cedar Cove, Inc. v. Stanzione,* 122 *N.J.* 202, 213, 584 *A.*2d 784 (1991) (citations omitted). A review of the legislative history of the enactment does not support the conclusion that the Legislature intended to authorize the deduction of a NOL by a corporation that did not sustain the loss simply because it acquired through merger the corporation that incurred the loss.

Prior to 1985, corporations were not permitted to carry forward current net-operating losses to future tax years. There was concern, therefore, that this practice discouraged businesses from operating in New Jersey because businesses, which often sustain operating losses, were not able to offset those losses against future gains. *See Report of the New Jersey Tax Policy Committee* (Part V, Non–Property Taxes in a Fair and Equitable Tax System) (Feb. 23, 1972). Accordingly, businesses were drawn to neighboring states offering more favorable tax treatment. In response to that concern, the Legislature, in 1985, amended the CBT to permit corporations to carry forward current net-operating losses to future tax years. *L.*1985, *c.* 143 (effective April 22, 1985, now reflected in *N.J.S.A.* 54:10A–4(k)(6)).

Auto City refers to a comment of former Governor Thomas H. Kean relating to the enactment of the net loss carryover provisions to support its argument that the NOL deduction was intended to be allowed to a corporation that survives a merger even though it had not sustained the past operating losses. The Governor stated that "the amendment [*N.J.S.A.* 54:10A–4(k)(6) ] to the corporation business tax act permitting a 'loss-carryfo[r]ward

... puts New Jersey in a better competitive position with our neighbor states in competing for new businesses.' " 12 *N.J.Tax* at 628–29 (quoting Governor Kean). Auto City construes that remark to relate specifically to the existing New York statutes, *see* *N.Y.Tax* §§ 208(9)(f), (13), (15), and (17) (1989), that allowed the NOL carryover deduction to a surviving corporation. However, the Governor's actual comment implies only that the amendment would improve New Jersey's comparative competitive position; it in no way suggests that the amendment was intended to deal only with competition from New York or to equalize New Jersey's competitive position with that of New York's by duplicating New York statutes. 12 *N.J.Tax* at 629; *see Fields v. Hoffman,* 105 *N.J.* 262, 270, 520 *A.2d* 751 (1987) (observing that Governor's press release is not the most authoritative legislative history).

Available legislative history suggests that the amendment was enacted to improve the tax climate for business corporations by allowing them to overcome fluctuating incomes.. *See* Assembly Revenue, Finance and Appropriations Committee, *Statement to Assembly Bill No. 2144,* at 8 (1984) ("This exclusion from net income allows a carryforward of net-operating losses incurred during the early years of a corporation's business to offset the profits in later years."). When enacted to permit such income adjustment, *N.J.S.A.* 54:10A–4(k)(6) improved New Jersey's competitive position with its neighbors by affording New Jersey corporate taxpayers a benefit not theretofore allowed. It did so by providing corporations the ability to carry forward and deduct their own net-operating losses from future income.

The Appellate Division, in holding that *N.J.S.A.* 54:10A–4(k)(6) was intended to permit a corporation surviving a merger to carryover and deduct losses sustained by the acquired corporation, relied strongly on federal law. It found that *N.J.S.A.* 54:10A–4(k)(6) and sections 23(s) and 122 of the 1939 Internal Revenue Code ("I.R.C.") are comparable in that both statutes define net-operating losses in almost the same way, permit the carryover of those losses, and are silent as to whether those losses may be

carried over in a merger or reorganization. 270 *N.J.Super.* at 97, 636 *A.*2d 572.

We acknowledge that it is often helpful to look to an analogous federal statute when interpreting a New Jersey statute. *Galloway Township Bd. of Educ. v. Galloway Township Ass'n of Educational Secretaries,* 78 *N.J.* 1, 10, 393 *A.*2d 207 (1978). However, when the Legislature intends to incorporate federal income tax provisions, standards or concepts, it does so explicitly. *Amerada Hess Corp. v. Director, Div. of Taxation,* 107 *N.J.* 307, 321, 526 *A.*2d 1029 (1987), *aff'd,* 490 *U.S.* 66, 109 *S.Ct.* 1617, 104 *L.Ed.*2d 58 (1989); *Smith v. Director, Div. of Taxation,* 108 *N.J.* 19, 33, 527 *A.*2d 843 (1987).

We are unable to conclude that the 1939 I.R.C., as interpreted and applied, shaped the Legislature's purpose in providing for a net loss carryover deduction. As pointed out by Judge Andrew, the legislative history does not indicate that the Legislature sought to incorporate or codify within *N.J.S.A.* 54:10A–4(k)(6), nearly fifty-year-old federal law. Rather,

> the Legislature had to be acutely aware of the fact that prior to the extensive revision of the *I.R.C.* in 1954, the federal law governing loss carryovers was rife with flagrant abuses. It is difficult to believe that the Legislature intended to perpetuate an abusive program for loss carryovers by silently adopting federal law predating the 1954 tax code revisions.
>
> [12 *N.J.Tax* at 632 (citations omitted).]

The Appellate Division, however, believed that federal decisional law interpreting the carry-back and carry-forward provisions of the 1939 I.R.C. influenced our Legislature's judgment in granting such a deduction in 1985. 270 *N.J.Super.* at 98–102, 636 *A.*2d 572. It refers to decisions that allowed such a deduction by a corporation surviving a merger that had not itself sustained the loss. That decisional law, however, is problematic as a source for interpreting the meaning of the State's CBT primarily because those decisions reflect principles of taxation that are inconsistent with the policies incorporated in the CBT.

The Appellate Division focused on *Helvering v. Metropolitan Edison Co.,* 306 *U.S.* 522, 59 *S.Ct.* 634, 83 *L.Ed.* 957 (1939), in

which the Supreme Court addressed the question whether, under the Revenue Acts of 1926 and 1928, a Pennsylvania corporation was permitted to deduct unamortized bond discount and expense of a subsidiary whose assets it had previously acquired. The Supreme Court reasoned "the corporate personality of the transferor is drowned in that of the transferee" and the transferee would be liable for the debts of the transferor. *Id.* at 529, 59 *S.Ct.* at 638, 83 *L.Ed.* at 964. Therefore, the Supreme Court concluded that the successor corporation may deduct the unamortized bond discount and expense. *Ibid.*

In *Newmarket Manufacturing Co. v. United States*, 233 *F.*2d 493 (1956), *cert. denied*, 353 *U.S.* 983, 77 *S.Ct.* 1279, 1 *L.Ed.*2d 1142 (1957), the First Circuit Court of Appeals relied on *Metropolitan Edison Co., supra*, in analyzing the availability of net-operating loss carryover deductions under sections 23(s) and 122 of the 1939 I.R.C. As noted by the Appellate Division:

> The *Newmarket* court interpreted *Metropolitan Edison* as meaning "the transferee in a statutory merger should be deemed to be continuing in itself the corporate life of the now-defunct component, and that it followed from this conceptual identity that the two corporate entities were to be treated for a substantive purpose in the income tax as the same taxpayer." *Newmarket, supra*, 233 *F.*2d at 499. The court pointed out that a carryback privilege should not be lost in a statutory merger which is merely a change in identity or form and concluded that "the principle of the *Metropolitan Edison* opinion should be applied to a net operating loss carryback on the facts of the case at bar." *Id.* at 498.
>
> [270 *N.J.Super.* at 99 [636 *A.*2d 572.]

However, in a much earlier case, *New Colonial Ice Co. v. Helvering*, 292 *U.S.* 435, 54 *S.Ct.* 788, 78 *L.Ed.* 1348 (1934), the United States Supreme Court interpreted section 204(b) of the Revenue Act of 1921. The Supreme Court adopted the so-called "continuity of legal entity" rule, and affirmed the disallowance of a loss carry-over where the assets of the loss-suffering corporation were transferred to a newly created corporation in exchange for the latter's stock. The Supreme Court ruled that the new corporation was not the same taxpayer, in spite of the fact that it carried on the same business, had the same stockholders, and had substantially the same capital structure. Because the loss-suffer-

ing corporation did not emerge as the surviving corporation in the reorganization, the loss could not be carried over.

In *Libson Shops, Inc. v. Koehler*, 353 *U.S.* 382, 77 *S.Ct.* 990, 1 *L.Ed.*2d 924 (1957), sixteen corporations, all incorporated for the purpose of selling women's apparel, merged into a seventeenth corporation, which provided management services. The stock of all seventeen corporations was owned, directly or indirectly, by the same individuals in the same proportions. Prior to the merger, all corporations filed individual tax returns. After the merger, pursuant to I.R.C. sections 23(s) and 122, the surviving corporation sought to deduct the net-operating losses sustained pre-merger by three of the acquired corporations. The Supreme Court affirmed the Eighth Circuit Court of Appeals, disallowing the deduction.

The Supreme Court in *Libson* noted that *Newmarket* involved a Massachusetts corporation that created a Delaware corporation, and merged into it for the purpose of changing its domicile. In *Newmarket*, the court allowed the deduction because "throughout the whole period in question there was only one single business ... which had a profitable year followed by several bad ones," 233 *F.*2d at 497, and, as pointed out in *Libson*, "[b]ut for the merger, the old corporation itself would have been entitled to a carry-back." 353 *U.S.* at 388, 77 *S.Ct.* at 994, 1 *L.Ed.*2d at 929. In *Libson*, however, the Court concluded that the taxpayer was "not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses." *Id.* at 390, 77 *S.Ct.* at 994, 1 *L.Ed.*2d at 929.

The Appellate Division attempts to discredit *Libson*, noting that other courts have rejected the "continuity of business test" in favor of a "continuity of ownership test," citing *Chilivis v. Studebaker Worthington, Inc.*, 137 *Ga.App.* 337, 223 *S.E.*2d 747, 750–51 (1976). 270 *N.J.Super.* at 100, 636 *A.*2d 572. We note, however, that in adopting the "continuity of ownership" theory, *Chilivis* relied on dictum from *Norden–Ketay Corp. v. Commissioner of Internal Revenue*, 319 *F.*2d 902 (1963), a Second Circuit case,

while two additional Second Circuit cases rejected the "continuity of ownership test," *e.g.*, *Allied Central Stores, Inc. v. Commissioner of Internal Revenue*, 339 *F*.2d 503 (1964); *Julius Garfinckel & Co. v. Commissioner of Internal Revenue*, 335 *F*.2d 744 (1964).

The Appellate Division's observation that Auto City and Catena, unlike the corporations in *Libson,* conducted the "same business" and filed consolidated federal tax returns is not persuasive as a factor that would justify the recognition of the tax status of the merged corporation. The corporations conducted related but not identical businesses and, although the corporations filed consolidated returns for federal income-tax purposes, consolidated corporate filings are not permitted under the CBT. *See* discussion *supra* at 531–32, 659 *A*.2d at 1364–65.

Auto City makes the further argument that the similarity of the language of *N.J.S.A.* 54–10A–4(k)(6)(D) and 26 *U.S.C.A.* §§ 269 and 382 of the 1954 I.R.C. is evidence of the Legislature's intent to adopt the federal tax scheme, which provides for the carryover of net-operating losses by the surviving corporation. The Tax Court rejected that argument.

Although the language of *N.J.S.A.* 54:10A–4(k)(6)(D) is similar to those provisions of the 1954 federal tax code, the "language employed by the Legislature ... does not suggest that the Legislature intended to incorporate federal substantive rules relating to loss carryovers after corporate acquisitions." 12 *N.J.Tax* at 634. As the Tax Court observed:

§ 172 of the [Internal Revenue] Code is the operative provision which permits a taxpayer to carry a loss back three years or forward 15 years from the year in which it occurs. Although conferring greater tax benefits than §§ 4(k)(6)(A) and (B), § 172 operates somewhat in the same manner as does §§ 4(k)(6)(A) and (B), that is, it confers a tax benefit by permitting the loss carryover. Section 172, like §§ 4(k)(6)(A) and (B) of the CBT, is silent with respect to loss carrybacks or carryovers in mergers, consolidations or other corporate reorganizations.

Section 381 of the Code is the provision which sets forth the circumstances under which loss carryovers in mergers, consolidations or other corporate reorganizations will be permitted. This section allows loss carryovers in five specified types of corporate acquisitions or reorganizations. *There is no counterpart to § 381 in the CBT act.*

[*Ibid.* (emphasis added).]

We agree with the Tax Court that knowing of the existence of section 381, which came into the I.R.C. in 1954, and its permissive treatment of NOL carryovers in corporation mergers, the Legislature did not incorporate anything similar to section 381 in the CBT act relating to loss carryovers, specifically in corporate acquisitions or reorganizations. *Id.* at 635. Therefore, one cannot conclude that the Legislature intended to permit loss carryovers in those circumstances.

The Appellate Division also looked to provisions of the New Jersey Business Corporations Act ("BCA"), *N.J.S.A.* 14A:1–1 to 16–4, to bolster the thesis that a surviving corporation can use the tax deduction of the merged corporation. 270 *N.J.Super.* at 101–02, 636 *A.*2d 572. *N.J.S.A.* 14A:10–6 describes the effect of a merger or consolidation:

> (c) Such surviving or new corporation shall, to the extent consistent with its certificate of incorporation as amended or established by the merger or consolidation, possess all the rights, privileges, powers, immunities, purposes and franchises, both public and private, of each of the merging or consolidating corporations.

> (e) The surviving or new corporation shall be liable for all the obligations and liabilities of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be enforced as if such merger or consolidation had not taken place. Neither the rights of creditors nor any liens upon, or security interests in, the property of any of such corporations shall be impaired by such merger or consolidation.

In allowing Auto City to deduct the losses sustained by Catena, the Appellate Division reasoned that

> *N.J.S.A.* 14A:10–6 is akin to the holding of *Metropolitan Edison.* Thus, the corporate personality of the transferor is consumed by that of the transferee and the transferee is liable for the debts of the transferor. *Metropolitan Edison, supra,* 306 *U.S.* at 529, 59 *S.Ct.* at 638, 83 *L.Ed.* at 964. Therefore, it is not unreasonable to conclude that the tax attributes of the predecessor corporation actually become the tax attributes of the surviving corporation. Because Catena, Inc. merged with Auto City, Auto City inherited the obligations and liabilities of Catena, Inc. (*N.J.S.A.* 14A:10–6(e)) and should also inherit the rights and privileges, such as the tax attributes. *N.J.S.A.* 14A:10–6(c).

[270 *N.J.Super.* at 101–02, 636 *A.*2d 572.]

The Tax Court, however, rejected the claim that the "rights and privileges" that Auto City inherited from Catena included the loss carryovers "it seeks to deduct ... as the surviving corporation in the merger." 12 *N.J.Tax* at 637. The Tax Court concluded that "there is no basis for construing the CBT act *in pari materia* with the New Jersey Corporation Business Act, specifically *N.J.S.A.* 14A:10–6." *Ibid.* It pointed out that "the two acts deal with different subjects (corporate law and tax law), have different purposes and are clearly not part of a single comprehensive plan." *Id.* at 637–38.

"Statutes are considered to be *in pari materia* when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object." 2B Norman J. Singer, *Sutherland Statutory Construction,* § 51.03, at 138 (5th ed. 1992); *State v. DiCarlo,* 67 *N.J.* 321, 325, 338 *A.*2d 809 (1975) (stating that identity or similarity of purpose or object most convincingly justifies resort to rule of *in pari materia* as aid in statutory construction). In the context of this case, we agree with the Tax Court and conclude that *N.J.S.A.* 54:10A–4(k)(6) and *N.J.S.A.* 14A:10–6 should not be interpreted *in pari materia.*

Although clearly both acts address corporations, they do not have the same purpose or object. Enacted in 1968, the purpose of the BCA was "to simplify, clarify and modernize the law governing corporations." *N.J.S.A.* 14A:1–1(3)(a); *see Roxbury State Bank v. The Clarendon,* 129 *N.J.Super.* 358, 368, 324 *A.*2d, 24 (App.Div.1974). The purpose of the 1945 CBT, was to impose a privilege tax on certain corporations in order to raise revenue for the State. *See Report of the New Jersey Tax Policy Committee, supra.*

Aside from the clearly distinct purposes of the CBT and BCA, the fact that the acts were not enacted during the same time and make no specific reference to each other further indicates that they were not intended to be read *in pari materia.*

The Court in *International Flavors & Fragrances, Inc. v. Director, Division of Taxation*, 5 *N.J.Tax* 617 (Tax 1983), *aff'd*, 7 *N.J.Tax* 652 (App.Div.1984), *aff'd*, 102 *N.J.* 210, 507 *A.*2d 700 (1986), considered a corporation's challenge to the Division of Taxation's calculation of its "entire net income" under the CBT. In disputing the meaning of subsidiary for the purpose of calculating income, the Director asked the Tax Court to determine legislative intent by comparing the definition of "subsidiary" in the BCA with its use in the CBT. The Tax Court determined that the two enactments could not be read *in pari materia*. This Court agreed, stating that

> We likewise find unpersuasive the Director's reliance on the New Jersey Business Corporation Act, *N.J.S.A.* 14A:1–2(r).... We agree with the Tax Court that the Business Corporation Act's language cannot sensibly be used to give meaning to the language of the Corporation Tax Act.
>
> [*Intern. Flavors, supra*, 102 *N.J.* at 219 n. 5 [507 *A.*2d 700] (citation omitted).]

*Cf. Newark Bldg. Assocs. v. Director, Div. of Taxation*, 128 *N.J.Super.* 535, 539–40, 320 *A.*2d 867 (App.Div.1974) (ruling that Unincorporated Business Tax Act, *N.J.S.A.* 54:11B–1 to –23 (repealed), and Partnership Act, *N.J.S.A.* 42:1–1 to –43, are not *in pari materia*, nor are they statutes on cognate subjects); *Cooperstein v. Director, Div. of Taxation*, 13 *N.J.Tax* 68, 93 (1993) (concluding that Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 to –36, and New Jersey Gross Income Tax Act, *N.J.S.A.* 54A:1–1 to 10–12, are not treated *in pari materia* with BCA).

The Wisconsin Supreme Court reached a similar conclusion in *Fall River Canning Co. v. Wisconsin Department of Taxation*, 3 *Wis.*2d 632, 89 *N.W.*2d 203 (1958). There several canning corporations merged into a single surviving corporation, Fall River Canning Corporation. That corporation sought to deduct the net-operating losses of the acquired corporations. The court disallowed the claimed deduction. Although section 71.06 of the Wisconsin statutes limits the net loss carryover and deduction of net-operating losses to the taxpayer that sustained the loss, the statute did not expressly preclude the deduction of a loss after a merger by the surviving corporation when the acquired corpora-

tions is the one that incurred the loss. The court found the general grant of privileges to surviving corporations under the statutory merger provisions of the general corporations statute to be insufficient to convert by implication a specific deduction authorized under the tax statute into a privilege to be exercised by the surviving corporation. Rather, "[i]t would require a specific and unambiguous provision to accomplish that result." *Fall River, supra*, 89 *N.W.*2d at 205 (citing *Comet Co. v. Wisconsin Dep't of Taxation*, 243 *Wis.* 117, 9 *N.W.*2d 620 (1943)).

We further agree with the court's observation in *Fall River* that "one who claims an exemption must point to an express provision granting such exemption by language which clearly specifies the same, and thus bring himself clearly within the terms thereof," 89 *N.W.*2d at 206 (quoting *Comet, supra*, 9 *N.W.*2d at 623), and that the NOL carryover, as a statutory deduction, is to be strictly construed. Our "courts have consistently recognized that tax exemptions are to be strictly construed against the claimant." *GE Solid State, supra*, 132 *N.J.* at 306, 625 *A.*2d 468 (citations omitted); *see Fedders Financial Corp. v. Director, Div. of Taxation*, 96 *N.J.* 376, 386, 476 *A.*2d 741 (1984); *Board of Nat'l Missions v. Neeld*, 9 *N.J.* 349, 353, 88 *A.*2d 500 (1952); *Browning Ferris Indus. v. Director, Div. of Taxation*, 10 *N.J.Tax* 96, 101 (1988), *aff'd*, 236 *N.J.Super.* 521, 566 *A.*2d 542 (App.Div.1989).

The Appellate Division also alluded to the taxpayer's argument that the regulation is irrational because it permits the carryover of NOLs only if the corporation sustaining the loss is the survivor of a merger, but denies the loss carryover when the entity sustaining the loss is the acquired corporation. 270 *N.J.Super.* at 104, 636 *A.*2d 572. Auto City claims that the result of the merger is the same regardless of which corporation is listed as the survivor; therefore, the carryover and deduction should be permitted irrespective of how the merger is executed.

Corporate mergers are regulated specifically and must be effectuated in accordance with statutory authorization and with results that are statutorily prescribed. *See, e.g., N.J.S.A.* 14A:10–

1 to –13. The business decision to effectuate a corporate merger must be undertaken within the statutory framework. The State, in administering its tax laws, is entitled to assume that "corporate lines are real." *Household Finance Corp., supra,* 36 *N.J.* at 363, 177 *A.*2d 738.

The taxpayer complains that the tax consequence resulting from the manner in which the merger was executed is unfair and unjust. However, as pointed out by the Tax Court: "[A] voluntary business decision is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred." 12 *N.J.Tax* at 627 n. 3 (quoting *General Trading Co. v. Director, Div. of Taxation,* 83 *N.J.* 122, 136, 416 *A.*2d 37 (1980)); *see Mobay Chem. Corp. v. Director, Div. of Taxation,* 96 *N.J.* 407, 416–17, 476 *A.*2d 758 (1984). As explained by Chief Justice Weintraub in *Household Finance, supra:*

> We are not told why Household employed subsidiaries. A probable motivation was tax advantage somewhere. The question is whether a state must adjust its tax laws to avoid a disadvantage a taxpayer may experience because of its decision to incorporate a part of its operation. As a general proposition, the answer must be that it is for the taxpayer to make its business decisions in the light of tax statutes, rather than the other way around.
>
> [36 *N.J.* at 362 [177 *A.*2d 738] (citations omitted).]

We conclude that Auto City has not sustained the burden of proving that *N.J.A.C.* 18:7–5.13(b) is invalid.

We agree with the Tax Court and find that the regulation applies retroactively to the effective date of the statute. As a reasonable interpretation of the statute, the regulation applies as the statute applies—"[to] any taxable year ending after June 30, 1984." *N.J.S.A.* 54:10A–4(k)(6)(B). As noted by the Tax Court, "an administrative regulation 'does not, and could not, alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case at hand.'" 12 *N.J.Tax* at 641 (quoting *Manhattan Gen. Equip. Co. v. Commissioner of Internal Revenue,* 297 *U.S.* 129, 56 *S.Ct.* 397, 80 *L.Ed.* 528 (1936)).

The judgment of the Appellate Division is reversed, and the order of the Tax Court, granting summary judgment in favor of the Director of the Division of Taxation, is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.