KAHN, J.T.C.
Defendant (“Director”) moves for summary judgment to dismiss plaintiffs (“New Robins”) complaint. New Robins cross moves for summary judgment for reimbursement of taxes and interest paid pursuant to the New Jersey Corporation Business Tax Act (“CBT”), N.J.S.A. 54:10A-1, et seq. The taxable periods in issue emanate from refund claims filed for the last two weeks of 1989 (December 15, 1989 — December 31, 1989) and for the years 1990 through and including 1994. The central issue before this court involves New Robins’ allegation that it is permitted to utilize net operating losses (“NOL”) incurred by a predecessor corporation, A.H. Robins Company, Inc. (“Old Robins”), prior to its merger with New Robins.
Old Robins was incorporated in Virginia, on September 24,1948, under the laws of the State of Virginia. The principal business of Old Robins was the manufacture and marketing of prescription drugs, medical devices, supplies, and packaged medicines. From May 5, 1983, through the taxable period ending December 15, 1989, Old Robins filed returns as required by the CBT. As a consequence of producing the Daikon Shield, Old Robins faced extensive liability claims and consequently filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code, on August 21,1985.[1]
Pursuant to the sixth amended and restated plan of reorganization, dated March 28, 1988, (“the plan”), which became effective on December 15, 1989, American Home Products Corporation (“AHP”) was to acquire the business of Old Robins. This acquisition was structured as a merger of Old Robins into plaintiff, New Robins. New Robins’ address remained the same as Old Robins and was incorporated in Delaware, on December 31, 1987. As *342 part of the agreement to acquire Old Robins, AHP paid $2,055,000,000 to New Robins and became the sole shareholder of New Robins. Thus, New Robins became a wholly-owned subsidiary of AHP. New Robins then loaned the money paid by AHP to Old Robins for payment into a trust created for Daikon Shield claimants.
For the period December 16 — December 31, 1989 and for the tax years 1990 and 1991, New Robins initially sought to deduct NOL incurred by Old Robins. In its CBT returns for those taxable periods, New Robins claimed NOL deductions as a successor by merger to Old Robins in determining its entire net income allocable to New Jersey. On or about March 1, 1993, New Robins filed amended CBT returns and refund claims for the taxable period beginning December 16 — December 31, 1989, and for the tax years 1990 and 1991, which returns excluded the NOL deductions incurred by Old Robins. Tax and interest thereon was paid, which is now partially the subject of this action. Significantly, these amended returns were filed subsequent to the decision of the Tax Court in Richard’s Auto City, Inc. v. Director, Div. of Taxation, 12 N.J.Tax 619 (1992), rev’d, 14 N.J.Tax 436 (App.Div.1994), rev’d, 140 N.J. 523, 659 A.2d 1360 (1995). In that case, the Tax Court denied the use of NOL in a case with a fact pattern similar to the fact pattern in this ease; that holding was sustained by our Supreme Court.
For the remaining taxable years under review (1992 through 1994), in New Robins’ original CBT returns, New Robins did not claim a deduction for NOL incurred by Old Robins. However, on or about February 15, 1994, New Robins filed an amended return and claim for refund of CBT for tax year 1992, based on its claim of entitlement to a deduction for NOL incurred by Old Robins. Additionally, on or about January 15, 1998, New Robins filed an amended return and claim for refund of CBT taxes for tax years 1993 and 1994 based on its claim of entitlement to a deduction for NOL incurred by Old Robins.
The Director denied each of the refund claims made by New Robins for the taxable period December 16, 1989 — December 31, *343 1989 and for the tax years 1990 through 1994, all of which are currently under review.
The Director’s contentions are as follows:
(1) The Supreme Court of New Jersey in Richard’s Auto City v. Director, Div. of Taxation, 140 N.J. 523, 659 A.2d 1360 (1995), rejected the contention that N.J.S.A. 54:10A-4(k)(6) permits plaintiff to utilize the net operating losses incurred by Old Robins, and nothing in the present case requires a different result.
(2) New Jersey law is not preempted by the Federal Bankruptcy Code because there is nothing in the Bankruptcy Code which explicitly or implicitly indicates a congressional intent to preempt state tax laws after a reorganization is concluded, nor does the disallowance of the NOL conflict with the purpose of the Bankruptcy Code. (3) New Robins had the opportunity to obtain a ruling as to the effect of Old Robins’ NOL on future state tax obligations, and it chose not to do so. Therefore, any claim of preemption is barred.
First, New Robins argues that the Director’s decision to penalize a single taxpaying entity that continues to conduct the same business following reorganization necessitated by bankruptcy should be invalid. New Robins contends that Part (A) of N.J.S.A. 54:10A-4(k)(6) allows NOL to be deducted against a taxpayer’s “entire net income,” and Part (B) allows NOL to be carried forward for each of the seven years following the year of the loss. New Robins cites N.J.S.A. 54:10A-4(k)(6)(D) for the proposition that the New Jersey Legislature established two circumstances under which the carryover of NOL may be limited.
(D) Change in ownership. Where there is a change in 50% or more of the ownership of a corporation because of redemption or sale of slock and the corporation changes the trade or business giving rise to the loss, no net operating loss sustained before the changes may be carried over to be deducted from income earned after such changes. In addition where the facts support the premise that the corporation was acquired under any circumstance for the primary purpose of the use of its net operating loss carryover, the director may disallow the carryover. [Emphasis added.]
This statute provides two tests to determine when the carryover of NOL should be restricted. The first test prohibits a *344 corporation from carrying over accumulated NOL where there have been both: (1) a change in 50% or more of the ownership of a taxpayer corporation (through either the redemption or sale of stock), and (2) a change in the trade or business that gave rise to the NOL. The second test is subjective and allows the Director discretion to disallow the carryover of NOL when it appeal’s that a corporation was acquired for the primary purpose of obtaining its NOL.
New Robins argues that neither of these tests apply to Old Robins or New Robins. With regard to the first test, New Robins contends that although AHP acquired Old Robins through the bankruptcy merger, the reorganization did not result in any change in the business of Old Robins. New Robins continued to carry on the same business previously conducted by Old Robins. It merely changed its state of incorporation. As for the second test, New Robins contends that the acquisition of Old Robins and its NOL was simply a means to resolve the bankruptcy and allow New Robins’ business to continue. Therefore, neither limitation of the use of NOL found in the statute applies. ,
With respect to the issue of whether or not Old Robins “was acquired under any circumstance for the primary purpose of the use of its NOL carryover,” there is insufficient evidence presented by the parties for this court to render a determination. Even without determining this issue, there is sufficient information presented to permit this court to fully dispose of the cross motions.
Second, New Robins argues that the Director’s denial of the NOL carryover interferes with the full purpose and objectives of Congress in enacting the Bankruptcy Code. New Robins claims the Director’s denial is invalid because of the Supremacy Clause, U.S. Const., art. VI, cl. 2, which provides:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in eveiy State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
*345 There are three different circumstances under which a state statute may be preempted by federal law under the Supremacy Clause of the Constitution. (1) Congress can, within the limits established by the Constitution, preempt state law. Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 615, 725 A.2d 1104 (1999) (citing Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316, 325 (1988)).(2) State law will be preempted if Congressional intent is clear that a state regulation is not sustainable against a particular federal regulation. Franklin Tower One, supra, at 615, 725 A.2d 1104 (citing Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d. 714, 721 (1985)).(3) “[WJhere Congress has not completely displaced state regulation, federal law may nonetheless preempt state law to the extent it actually conflicts with federal law.” California Fed. Sav. & Loan Assn. v. Guerra, 479 U.S. 272, 282, 107 S.Ct. 683, 689, 93 L.Ed.2d 613, 623 (1987). Preemption may occur in one of two situations where “compliance with both federal and state regulations is a physical impossibility.” Franklin Tower One, L.L.C. v. N.M., supra, at 616, 725 A.2d 1104 (quoting Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248, 257 (1963)), or where state law, “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Id. at 616, 725 A.2d 1104, citing Michigan Canners & Freezers Ass’n v. Agricultural Mktg. & Bargaining Bd., 467 U.S. 461, 470, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399, 406 (1984). There are no such obstacles in the case at bar.
Third, New Robins argues that the Bankruptcy Court’s decision to approve the recovery plan should preempt the Director’s disallowance of the NOL carryovers because the reorganization of Old Robins was part of the overall approved bankruptcy plan, and thus, furthers the general policy of that plan. New Robins cites 11 U.S.C. Section 1123 for the proposition that bankruptcy law mandates the transfer of NOL in the ease at bar, even if this court construes New Jersey law to defeat transfer of NOL to New Robins.
*346 Section 1123(a) deals with the “Contents of a Plan” and is the statutory authority for the provisions of a chapter 11 reorganization plan. Section 1123(a) provides:
(a) Notvnthstanding any otherwise applicable nonbankruptcy law, a plan shall -
(1) designate ... classes of claims, ... and classes of interests;
(2) specify any class of claims or interests that is not impaired under the plan;
(3) specify the treatment of any class of claims or interests that is impaired under the plan;
(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest;
(5) provide adequate means for the plan’s implementation such as -
(A) retention by the debtor of all or any part of the property of the estate;
(B) transfer of all or paH of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;
(C) merger or consolidation of the debtor with one or more persons;
(D) sale of all or any part of the property or the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate;
(E) satisfaction or modification of any lien;
(F) cancellation or modification of any indenture or similar instrument;
(G) curing or waiving of any default;
(H) extension of a maturity date or a change in an interest rate or other term of outstanding securities;
(I) amendment of the debtor’s charter; or
(J) issuance of securities of the debtor, or of any entity referred to in subparagraph (B) or (C) of this paragraph, for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose;
[Emphasis added.]
New Robins contends that the language in 11 U.S.C. Section 1123(a), “notwithstanding any otherwise applicable non-bankruptcy law,” refers to both federal and state law. Therefore, according to this language, New Robins argues that this court should hold that the Bankruptcy Court order preempts any state tax principles which would subject New Robins to a diminution of the NOL. New Robins argues that this court should hold that if the Director prevailed, and subsequently invalidated the NOL that the Bankruptcy Court transferred to New Robins, the Bankruptcy Court’s binding order and plan would be vitiated.
*347 This court finds the taxpayer’s arguments to be without merit.
First, there is nothing in the Bankruptcy Code that explicitly indicates a Congressional intent to override state taxing statutes with respect to post-reorganization income tax liabilities of a non-debtor entity. Furthermore, Congress did provide in 11 U.S.C. Section 1146(d) that certain transfers made pursuant to a reorganization would be exempt from state taxation. The NOL transferred in the case at bar do not fit under that exemption.
Clearly, Congress did not contemplate suspending state income tax laws as they applied to non-debtor, post-reorganization entities. Once the assets of Old Robins were transferred to New Robins, they became subject to the tax laws of any jurisdiction having sufficient contacts with the property of New Robins.
Here, taxpayer is not the debtor entitled to protections provided by the Bankruptcy Code. In bankruptcy, property interests are regarded as created and defined by state law. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141-42 (1979). Unless a federal interest requires it, there is no reason why the state interests here should be analyzed differently, simply because AHP, through its subsidiary, New Robins, acquired property in a bankruptcy proceeding. Id.
When the New Jersey Legislature intends to incorporate federal income tax provisions, it does so “in clear terms.” Amerada Hess Corp. v. Director, Division of Taxation, 107 N.J. 307, 321-22, 526 A.2d 1029 (1987). Nowhere in N.J.S.A. 54:10A-4(k)(6) does it state that NOL may be utilized when they emanate from a merged corporation. The Bankruptcy Code also allows a corporation in the process of bankruptcy to request from a state (or local tax authority) the state income tax effects of reorganization. 11 U.S.C. Section 1146(d).
The court may authorize the proponent of a plan to request a determination, limited to questions of law, by a State or local governmental unit charged with responsibility for collection or determination of a tax on or measured by income, of the tax effects, under section 346 of this title and under the law imposing such tax, of the plan. In the event of an actual controversy, the court may declare such effects after the earlier of -
*348 (1) the date on which such governmental unit responds to the request under this subsection; or
(2) 270 days after such request.
[11 U.S.C. Section 1146(d)]
New Robins apparently made no inquiry pursuant to 11 U.S.C. Section 1146(d). Instead, while its case was pending before the Tax Court of New Jersey, New Robins appeared before the Bankruptcy Court twice, first seeking a declaratory judgment that it was entitled to the benefit of the NOL of Old Robins, A.H. Robins Company, Inc. v. Dieleuterio, et al., 235 B.R. 406 (Bankr.E.D.Va.1999), and then an interpretation of the plan, In re A.H. Robins Company, Inc., 251 B.R. 312, 320 (Bankr.E.D.Va.2000). Both suits were dismissed for lack of subject matter jurisdiction.
However, a decision on the effect of the Supremacy Clause on the outcome of the State tax proceedings first requires the interpretation and application of State tax laws. The meaning of the State tax laws must be determined by the State courts.[2] [Id.]
New Robins failed to make inquiry to the proper taxing authority, the New Jersey Division of Taxation, prior to the implementation ■of the merger, pursuant to 11 U.S.C. Section 1146(d).
Because there has been no preemption of New Jersey’s Corporation Business Tax by the Bankruptcy Code, this court grants the Director’s motion for summary judgment, dismissing the complaint.
Second, in order to effectively implement N.J.S.A. 54:10A-4(k)(6), the Director promulgated regulations, N.J.A.C. 18:7-5.12 through 18:7-5.16, which became effective on February 3, 1986. These regulations were clearly operational prior to the merger agreement of Old Robins and New Robins (March 21, 1988), and prior to the date of the plan (March 28,1988).
In relevant part, N.J.A.C. 18:7-5.13 states:
(b) the net operating loss may only be carried over by the actual corporation that sustained the loss. The net operating loss may, however, be carried over by the *349 surviving corporation of a statutory merger. The net operating loss may not be, carried over by a taxpayer that changes its state of incorporation or is a part of a statutory consolidation. Section 4(k) of the Act defines entire net income in terms of a specific corporate franchise. [Emphasis added.]
N.J.A.C. 18:7-5.13 provides the following example:
Example 1: A domestic corporation dissolves pursuant to latos of the State of New Jersey and incorporated in another state. This newly formed corporation of another state is a new legal entity for corporation business tax purposes and the net operating I-oss carryover of the domestic corporation is not available to the new entity. [Emphasis added.]
New Robins contends that this example is not applicable to the case at bar, arguing that the example contemplates the disallowance of future NOL deductions where a domestic corporation dissolves pursuant to the laws of the State of New Jersey and incorporates in another state, while the Robins’ situation is different, because it does not in any way change its relationship with New Jersey (ie., before and after reorganization, Robins was merely a foreign corporation doing business in New Jersey).
This court rejects New Robins’ distinction. No justification has been proffered other than to state that because New Robins is not incorporated in New Jersey, N.J.A.C. 18:7-5.13 does not apply. If the intention of the statute were to affect only corporations incorporated in New Jersey, it would do so explicitly. It does not. N.J.A.C. 18:7-5.13 clearly states that “[t]he net operating loss may not be carried over by a taxpayer that changes its state of incorporation.” For this reason alone, New Robins would not be permitted to use the NOL of Old Robins.
Third, New Robins attempts to distinguish itself from the Supreme Court of New Jersey’s decision in Richard’s Auto City, supra, on the grounds that Old Robins maintains the same business as New Robins. Richard’s Auto City, supra, 140 N.J. at 523, 659 A.2d 1360. New Robins argues that the court in Richard’s Auto City, supra, examined the validity of the Director’s regulations to the extent that they prevented the carryover of NOL in the context of a merger undertaken not for a bankruptcy reorganization, but only as a means to acquire another corporation.
*350 In that case, two commonly owned corporations, Richard’s Auto City (“Auto City”), an automobile dealership, and Catena, Inc. (“Catena”), which operated a lease financing business directed to Auto City’s customers, were merged. Auto City, the surviving corporation, claimed a deduction for the NOL that Catena suffered prior to the merger. The Director disallowed those deductions, and the Supreme Court of New Jersey ultimately upheld the disallowance.
New Robins contends that the flaw in the taxpayer’s argument in Richard’s Auto City, supra, was that it sought to extend the NOL deduction available to the single corporate entity that generated the NOL to another corporation with a different line of business through acquisition. Richard’s Auto City, 140 N.J. at 532, 659 A.2d 1360 (1995). New Robins argues that the limitation on the carryover of NOL set forth in N.J.SA. 54:10A-4(k)(6)(D) (which provides that NOL may not be carried over where the corporation was acquired for the purpose of using its net operating loss carryover) is inapplicable to New Robins because it continues to operate the same line of business. Although Richard’s Auto City, supra, recognized the issue of extending NOL deductions to another corporation with a different line of business as an issue, the court did not focus on that issue. Instead, the Supreme Court of New Jersey focused on the issue of recognizing losses of a non-taxpayer corporation. The court stated: “The flaw in [the surviving corporation’s] position is that it would, in effect, give tax recognition to the losses of a non-taxpayer corporation.” Ibid. N.J.S.A. 54:10A-4(k)(6) deals only with the treatment of the net operating losses of a single corporation which continues to exist and which utilizes the losses previously incurred by that .same corporate entity, and the Director’s regulation, N.J.A.C. 18:7-5.13(b), is a valid interpretation of that statute. “The language of the statute does not support the imputation of a legislative intent or the implication of statutory authority that would allow the transfer of tax deductions from an acquired corporation to the surviving corporation after a merger.” Richard’s Auto City, supra, 140 N.J. at 532, 659 A.2d 1360. [Emphasis added.] *351 The CBT deals with single corporations and not with two or more successive corporations which continue the same line of business.
The notion that the survivor of a corporate merger should be permitted to utilize the NOL incurred by the merged corporation provided that the survivor continues the business of the corporation dissolved by the merger is one that derives from federal tax law, as construed by the federal courts. Lisbon Shops v. Koehler, 353 U.S. 382, 77 S.Ct. 990,1 L.Ed.2d 924 (1957); New Market Mfg. Co. v. United States, 233 F.2d 493, 496 (1st Cir.1956). New Robins urges this court to find that the intent of the New Jersey Legislature, when it created its NOL provision in 1985, was to require the same treatment in New Jersey as given by the 1954 Internal Revenue Code and defined in New Market Mfg. Co. v. United States, which stated in part:
The details are not now relevant, but for present purposes it may be said in summary that, in accordance with the provisions of I.R.C. §§ 381 and 382, in a tax free reorganization the net operating loss of each component may be earned over to the survivor, subject to certain limitations, but without the necessity of shonoing any legal identity betioeen the predecessor and the successor. Ibid. [Emphasis added.]
In Richard’s Auto City, supra, however, the Supreme Court of New Jersey concluded the opposite:
We agree mth the Tax Court that knowing of the existence of section 381, ichich came into the I.R.C. in ISoi, and its permissive treatment of NOL carryovers in corporation mergers, the Legislature did not incorporate anything similar to section 381 in the CBT Act relating to loss carryovers, specifically in corporate acquisitions or reorganizations. Richard’s Auto City, supra, 140 N.J. at 539, 659 A.2d 1360. [Emphasis added.]
Furthermore, the court in Richard’s Auto City, supra, did not base its final determination on whether or not Auto City and Catena conducted the same line of business. The court stated:
The Appellate Division’s observation that Auto City and Catena ... conducted the same business and filed consolidated federal tax returns is not persuasive as a factor that would justify the recognition of the tax status of the merged corporation. Id. at 538.
The Supreme Court of New Jersey in Richard’s Auto City, supra, rejected the same legal theory espoused by New Robins, namely, that conducting the same business is a persuasive factor that would justify the recognition of the tax status of the merged *352 corporation. Therefore, the Director’s interpretation of N.J.S.A. 54:10A-4(k)(6), as implemented by N.J.A.C. 18:7-5.13, is upheld, and the Director’s motion for summary judgment is granted.
For the aforementioned reasons, this court grants the Director’s motion for summary judgment, dismissing the complaint. New Robins’ cross motion for summary judgment is denied.

The Daikon Shield was an intrauterine device (IUD) manufactured and marketed by the A.H. Robins Company from 1971 to 1975.

 The Bankruptcy Court, in In re A.H. Robins Company, Inc., found that it did not have further jurisdiction over the Director, Division of Taxation, as to the issue of the NOL deduction sought by New Robins.