PER CURIAM.
Plaintiff corporate business taxpayer appeals a Tax Court judgment affirming the Division of Taxation’s assessment of additional corporation business taxes for 1997 through 2000. In essence, the Tax Judge found that for 1997 plaintiff had improperly calculated its reported taxable income by using a net operating loss carryover it had created in 1996 utilizing a dividend exclusion, and for 1998, 1999 and 2000, by using a net operating loss carryover it had previously used in 1995. We affirm.
At particular issue here are two provisions of the Corporate Business Tax Act, N.J.SA 54:10A-4(k)(5) and N.J.S.A. 54:10A-4(k)(6). N.J.S.A 54:10A-4(k)(5) permits an exclusion for subsidiary dividends. N.J.SA 54:10A-4(k)(6)(A) permits “as a deduction for the privilege period the net operating loss carryover to that period.” N.J.S.A 54:10A-4(k)(6)(C) defines net operating loss as “the excess of the deductions over the gross income used in computing entire net income without the net operating loss deduction provided for in [N.J.S.A. 54:10A-4(k)(6)(A)] and the exclusions in [N.J.S.A 54:10A-4(k)(4) (deductions banks may take for international banking facility income)] and [N.J.SA. 54:10A~ 4(k)(5)].” The net operating loss, then, for the purpose of an allowable loss carryover must be calculated without considering the net operating loss deduction itself or the exclusions permitted *654 under subsections 4k(4) and (5). See N.J.A.C. 18:7-5.15(a), and (b).
As to the loss carryover deduction, N.J.S.A. 54:10A-4(k)(6)(B) provides:
A net operating loss for any privilege period ending after June 30, 1984 shall be a net operating loss carryover to each of the seven privilege periods following the period of loss. The entire amount of the net operating loss for any privilege period (the “loss period”) shall be carried to the earliest of the privilege periods to which the loss may be carried. The portion of the loss which shall be carried to each of the other privilege periods shall be the excess, if any, of the amount of the loss over the sum of the entire net income [defined in N.J.S.A. 5U:10A-Jf(k)], computed without the exclusions permitted in [N.J.S.A 5í:10A-Uk)(i)J and [N.J.S.A 5b:10A-í(k)(5)] of this subsection or the net operating loss deduction provided by [N.J.S.A 5í:10A-b(k)(5)], for each of the prior privilege periods to which the loss may be carried.
[Emphasis added.]
“Entire net income” is defined in N.J.S.A. 54:10A-4(k) as “total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets.” (Emphasis added).
Here is what plaintiff taxpayer attempted to do. In 1995, it had $1,830,290 in net operating loss carried over from 1991, 1993 and 1994. After certain required adjustments, its entire net income for that year was $4,156,291. Pursuant to N.J.S.A. 54:10A-4(k)(6)(A), it deducted the full carryover loss from its entire net income, reducing its income to $2,326,001. Pursuant to N.J.S.A. 54:10A~4(k)(5), plaintiff had a dividend exclusion of $4,611,783. After it excluded this amount from its $2,326,001 income, it was left -with a negative net income of $2,285,782.
As it had utilized all of its net operating carryover loss of $1,830,290, and had no loss for 1995, plaintiff had no net operating loss for that year to carry over to 1996. Nonetheless, it claimed its negative income amount from 1995, which it had obtained by deducting the dividend income from the income that had remained after application of the carryover loss, as a net operating loss deduction for 1996. It then used another dividend exclusion, arrived at another negative income, which it then used as a net operating loss carryover for 1997.
*655 In affirming the Division’s assessment of additional taxes for 1997, the tax court judge observed:
It is worth spending time I think in reading carefully the provisions of the net operating loss deduction section of the statute. (N.J.S.A. 54:10A-4(k)(6)(A)] is — is not significant for the purposes of the issue before me. (N.J.S.A 54:10A-4(k)(6)(B)] is entitled ‘net operating loss carryover’ and states
A net operating loss for any privilege period ending after June 30, 1984 shall be a net operating loss carryover to each of the 7 privileged periods following the period of the loss. The entire amount of the net operating loss for any privilege period (“the loss period”) shall be carried to the earliest of the privilege periods to which the loss may be carried. The portion of the loss which shall be carried to each of the other privilege periods shall be the excess, if any, of the amount of the loss over the sum of the entire net income, computed without the exclusions permitted in paragraphs (4) and (5) of this subsection or the net operating loss deduction provided by subparagraph (A) of this paragraph for each of the prior privilege periods to which the loss may be carried.
Now, stopping with that paragraph. The paragraph establishes two legal principles are applicable to the matter before me and obviously are binding upon me for purposes of deciding the motions. One is that a net operating loss carryover must be used against any income available as soon as possible. A taxpayer may not — a taxpayer having income in year 1 may not elect not to use the net operating loss carryover in that year and defer the use of the carryover until year 2 or 3, 4, 5, 6 or 7.
The second principle which is even more directly relevant is that the income against which the net operating loss carryover is applied is the entire net income computed without the dividend [exclusion] set forth in paragraph 5. That seems to me fairly clearly sot forth in the statute. And that interpretation is confirmed in paragraph C which states — which is entitled ‘net operating loss’ and states,
For purposes of this paragraph the term net operating loss means the excess of the deductions over the gross income used in computing entire net income without the net operating loss deduction provided for in subparagraph (A) of this paragraph and the exclusions in paragraphs (4) and (5) of this subsection. Stopping there for a moment. First of all, the statute defines net operating loss
as the excess of deductions over gross income and carefully uses the word deductions, not deductions and exclusions. And it further provides that in calculating the net operating loss amount the ... computation of entire net income shall be without the exclusion provided for in paragraph 5 of the statute, that is, without the dividend exclusion set forth in paragraph 5.
... [A] comment by Justice Clifford in his concurring opinion [in International Flavors & Fragrances, Inc. v. Dir., Div. of Taxation, 102 N.J. 210, 221-22, 507 A.2d 700 (1986),] is of some relevance.
Justice Clifford states,
“I am quick to acknowledge that for me the meaning of taxing statutes does not always leap off the page with the same pellucidity as, say, an act prohibiting careless driving (see N.J.S.A. 30:4-97). So much of the blame for that regrettable circumstance as does not repose in my shortcomings may inhere in the very *656 nature of the subject. Tax law is sometimes arcane. The statutes dealing with it can become elaborate, even baroque — witness the Internal Revenue Code, not much in demand for a quiet afternoon in the hammock. And like Judge Simon Rifkind, T would no more have the audacity to formulate my own tax return than I would engage in open heart surgery.’ ” ____
It seems to me that Justice Clifford as he often was is right on target, the tax statutes are sometimes arcane and could be described as baroque. But not these statutes. And I cite him because it seems to me that the statutes relating to the computation of the net operating loss are examples where the [Ljegislature has expressed itself with clarity and where there’s really no doubt in my mind as to the proper interpretation of the statute.
We are in entire agreement. Even were there some ambiguity in the statute, we would be guided by the well established principle that exclusions and deductions are matters of legislative grace which must be strictly construed against the claimant. Richard’s Auto City, Inc. v. Dir., Div. of Taxation, 140 N.J. 523, 542, 659 A2d 1360 (1995). This is because a tax exemption “is a departure from the equitable principle that everyone should bear his just and equal share of the public tax burden. Taxation is the rule; exemption is the exception to the rule.” Phelps Dodge Indus., Inc. v. Dir., Div. of Taxation, 8 N.J.Tax 354, 358 (Tax 1986). See New Jersey Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177, 685 A.2d 1309 (1996), cert. denied, 520 U.S. 1241, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997); Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961).
As for 1998, 1999 and 2000, plaintiff sought to revitalize the $1,830,290 carryover loss it had used in its 1995 return. For each of those three years, it offset its entire net income by a portion of that loss. But, as the tax court judge wrote in his supplemental opinion:
In its 1998,1999 and 2000 returns, plaintiff abandoned its use of a net operating loss carryover based on $2,285,782 and, for each of those years, sought to reuse the $1,830,290 net operating loss carryover originally applied against entire net income in plaintiff’s 1995 tax return. Plaintiffs theory was that the dividend exclusion for that year ($4,611,783) was more than sufficient to offset its entire net income and, therefore, it had no need to deduct a net operating loss carryover in 1995. Under this theory, the carryover remained available in future years. However, as explained in my bench opinion, plaintiff, in its 1995 tax return (which was never amended), properly subtracted its total net operating loss carryover from entire net income before subtracting the dividend exclusion. Consequently, plaintiff *657 exhausted its net operating loss carryover in 1995, and no carryover remained for deduction in 1998,1999 or 2000.
We agree.
Plaintiff argues on appeal that the Tax Court judge construed N.J.SA 54:10A~4(k)(5) and N.J.SA 54:10A-4(k)(6) “to be consonant with each other. However ... they are contradictory and require a judicial determination to bring them into harmony.” The two sections are inconsistent, asserts plaintiff, because N.J.S.A. 54:10A-4(k)(6) defines net operating loss carryover deduction as the excess “of the amount of the loss over the sum of the entire net income, computed without the exclusions permitted in [N.J.SA 54:10A-4(k)(4) and N.J.SA 54:10A-4(k)(5)],” yet by definition, namely N.J.SA. 54:10A-4(k)(5), entire net income is computed by excluding dividends.
Plaintiff’s position is based on an incorrect definition of entire net income. N.J.SA. 54:10A-4(k)(5) is not a definition of entire net income. It simply provides for an available exclusion. Section 4(k) defines entire net income as “total net income from all sources____” N.J.S.A. 54:10A-4(k). That includes dividend income from subsidiaries. Subsection (k)(5) creates a dividend exclusion from entire net income but it does not change this definition. Thus, defining net operating loss for the purposes of the carryover deduction as the excess of allowable deductions over “the gross income used in computing entire net income” but without statutorily authorized exclusions raises no inconsistencies with the definition of entire net income.
Additionally, as the Director argues, the purposes of N.J.S.A. 54:10A-4(k)(5) and N.J.SA 54:10A-4(k)(6) do not conflict with each other but rather work together to lower taxable income. While N.J.SA. 54:10A-4(k)(5) was intended to eliminate double tax on dividends from subsidiaries, International Flavors & Fragrances, Inc. v. Dir., Div. of Taxation, supra, 102 N.J. at 216-17, 507 A.2d 700, and N.J.S.A 54:10A-4(k)(6) was intended to allow businesses to “overcome fluctuating incomes,” Richard’s Auto City, Inc. v. Dir., Div. of Taxation, supra, 140 N.J. at 534, 659 A.2d 1360 (citing Assembly Revenue, Finance and Appropriations Committee, Statement to Assembly Bill No. 2144, at 8 (1984)), the *658 underlying purpose of both is to encourage business in New Jersey. Nonetheless, a taxpayer is not guaranteed the right to utilize both in a particular tax year.
Plaintiffs primary argument seems to be that if the net operating loss carryover deduction is applied to the entire net income without first excluding the dividends income, then the purpose of N.J.S.A. 54:10A-4(k)(5) will be jeopardized or negated and those dividends will be double taxed. But regardless of whether a company has a net operating loss, a net operating loss carryover deduction, or a profit, it will not pay taxes on its N.J.S.A. 54:10A-4(k)(5) dividends. And, as the Tax Court here said:
It may be that in an ideal world the argument made by plaintiff makes some sense and that by applying the net operating loss first and the dividend exclusion second there is under some circumstances, although I haven’t thought of any yet, a situation where the dividend is subjected to duplicate taxation.
That, however, would be' a matter for the Legislature to address.
In effect, because of the amount of its carryover loss deduction, plaintiff could not fully utilize its dividend deduction. We are not convinced that that is a result not contemplated by the Legislature. As the tax court judge noted, the Legislature enacted N.J.S.A. 54:10A — 4(k)(6) and amended N.J.S.A. 54:10A-4(k)(5) at the same time in 1985. Thus, the Legislature was “fully cognizant of the parallel existence ... [and] was careful to define the net operating loss carryover as being calculated before any consideration of the dividend exclusion.” Moreover, while plaintiff concedes that a subsidiary dividend pursuant to N.J.S.A. 54:10A-4(k)(5) cannot be used to enhance a net operating loss, that is exactly what it did in 1997. The net operating loss carryover deduction that it took was nothing more than a portion of the dividend exclusion that it had used in 1995 to arrive at a negative income.
International Flavors & Fragrances, Inc. v. Dir., Div. of Taxation, supra, 102 N.J. at 221, 507 A.2d 700, is not to the contrary. The sole issue before the Court was whether N.J.S.A. 54:10A-4(k)(1), (amended and renumbered to N.J.S.A. 54:10A-4(k)(5) (1985)), “requires direct record ownership of 80% of a subsidiary’s stock or whether it is permissible for the corporate taxpayer and *659 its wholly-owned subsidiary to aggregate the stock that they own in the dividend-paying subsidiary in order to satisfy the 80% ownership test.” Id. at 211, 507 A.2d 700. The interplay between N.J.S.A. 54:10A-4(k)(5) and N.J.S.A 54:10A-4(k)(6) was not at issue. Indeed, N.J.S.A. 54:10A-4(k)(6) was not mentioned at all by the Court.
Affirmed for the reasons set forth by Judge Harold A. Kuskin in his June 25, 2001, oral decision and his August 9, 2004, written supplement decision.