KUSKIN, J.T.C.
Plaintiff, a non-profit trade association, has a membership consisting of financial services companies that provide financing for investments in, and utilization of, capital equipment. On behalf of its members,[1] plaintiff challenges the validity of the Director’s 2007 amendment to N.J.A.C. 18:7-3.17, a regulation interpreting the provisions of N.J.S.A. 54:10A-5a, a provision of the Business Tax Reform Act, L. 2002, c. 40. This Act amended the Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -41, in various respects. In N.J.S.A. 54:10A-5a the Legislature imposed an alternative minimum assessment (“AMA”) to be used in calculating liability for corporation business tax (“CBT”), and provided a credit against CBT based on the amount of AMA payable, if any. Plaintiff contends that the amendment to the regulation conflicts with the provisions of the statute relating to the computation and application of the credit.
CBT generally is based on a corporate taxpayer’s “entire net income.” N.J.S.A. 54:10A-5. The AMA, however, is based on either the taxpayer’s gross profits or gross receipts, as elected by the taxpayer. N.J.S.A. 54:10A-5a(c). Calculation of the AMA involves multiplying a taxpayer’s gross profits or gross receipts by a tax factor set forth in the statute. For privilege periods beginning between January 1, 2002 and June 30, 2006, N.J.S.A *530 54:10A-5a(b) and (e), a corporate taxpayer was obligated to pay the greater of (i) the amount of tax calculated pursuant to N.J.S.A. 54:10A-5 and (ii) the AMA calculated pursuant to N.J.S.A. 54:10A-5a.
Under N.J.S.A. 54:10A-5a(f)(l), a taxpayer liable for the AMA is entitled to a credit against CBT as follows:
If the alternative minimum assessment for a taxpayer computed pursuant to this section exceeds the tax computed pursuant to [N.J.S.A. 54:10A-5] for a privilege period, the taxpayer shall be allowed an amount of credit equal to the amount by which the alternative minimum assessment computed pursuant to this section for the privilege period exceeds the tax computed pursuant to [N.J.S.A. 54:I0A-5] for that privilege period____ The amount of credit may be carried forward for application in subsequent privilege periods subject to the limitations of paragraph (2) of this subsection.
[NJ.S.A 54:10A-5a(fXl).]
The entire credit calculated pursuant to this provision may not necessarily be applied in a particular privilege period. The amount of AMA credit available under N.J.S.A. 54:10A-5a(f)(l) that may be applied is limited by N.J.S.A. 54:10A-5a(f)(2) as follows:
[T]he amount of credit applied [for a privilege period] shall not reduce the amount of tax otherwise due to less than the alternative minimum assessment as computed pursuant to this section for the privilege period, shall not reduce the amount of tax otherwise due by more than 50%, and shall not reduce the amount of tax otherwise due below the statutory minimum provided in subsection (e) of [N.J.S.A 54:10A-5].
[NJ.S.A 54:10A-5affl(2).]
For purposes of determining, under N.J.S.A. 54:10A-5a(f)(l), whether the alternative minimum assessment exceeds the CBT “otherwise due” under N.J.S.A 54:10A-5 and the amount, if any, of the credit available for a privilege period, the Director has interpreted the phrase “tax computed pursuant to [N.J.S.A. 54:10A-5]” to mean CBT after application of a variety of statutory credits. These credits (the “Incentive Credits”) generally are intended to provide incentives to business activity and investment in New Jersey. Table A annexed to this opinion lists the Incentive Credits and summarizes their respective statutory language relating to the calculation of each credit and to the priority of application assigned to each credit.
*531 The Director’s interpretation of “tax computed pursuant to [N.J.S.A. 54:10A-5]” is consistent with the AMA’s statutory purpose of revenue enhancement.[2] If, for purposes of calculating a taxpayer’s CBT liability, the AMA were compared with the CBT calculated before application of the Incentive Credits, that comparison could indicate that the AMA was not applicable because the CBT under N.J.S.A. 54:10A-5 exceeded the amount of the AMA. However, if the taxpayer were entitled to any of the Incentive Credits, the taxpayer’s actual payment of CBT could be less than the AMA. By comparing the AMA with CBT liability after application of the Incentive Credits, the Director has assured that the actual payment by the taxpayer, and the corresponding AMA credit to which the taxpayer will be entitled, will be the greater amount.
The CBT return, Form CBT-100, has reflected the foregoing interpretation since enactment of the AMA. Under the structure of the form, the taxpayer determines, in Line 11, its CBT liability under N.J.S.A. 54:10A-5, then, in Line 12, subtracts credits applicable against the liability. The result of the subtraction, Line 13 of the form, constitutes “TOTAL CBT TAX LIABILITY.” The AMA is inserted in Line 14, and line 15 defines the “Tax Due” as the greater of the tax liability set forth in Line 13 and the AMA set forth in line 14.
The credit amount inserted in Line 12 of the CBT-100 form includes the Incentive Credits and AMA credit. The AMA credit is calculated in Form 315, a document the Director promulgated upon enactment of the AMA, and the contents of which have remained unchanged to date. Part 1 of this Form provides for the computation of the credit allowable for each privilege period, followed by subtraction of the credit amount previously applied, in order to determine the credit amount remaining available to the taxpayer for the current privilege period. Part 2 of the Form provides for the computation of the amount of the available credit that is usable by the taxpayer for the current privilege period. *532 Part 2 is structured so that the total of the AMA credit for a particular year and the Incentive Credits applicable for that year may not exceed fifty percent of the CBT liability set forth in line 11 of the CBT-100 form. In other words, for purposes of calculating the allowable AMA credit for a particular privilege period, the AMA credit is aggregated with the Incentive Credits so that the combined credits will not exceed fifty percent of the CBT liability otherwise payable. It is this aggregate credit amount that is deducted in Line 12 of the CBT-100 form.
The instructions for Form 315 refer to the permitted carryover of AMA credits to be applied against regular CBT liability, state that the credits never expire, and caution that limitations exist “as to how much credit can be taken on any single return.” The instructions reiterate the three limitations on the usable annual credit amount as contained in N.J.S.A. 54:10A-5a(f)(2), namely, that the credit may not reduce the taxpayer’s CBT liability to an amount below: (i) the AMA, (ii) fifty percent of the regular CBT liability otherwise due, or (iii) the minimum tax imposed by statute.
The regulation challenged by plaintiff, N.J.A.C. 18:7-3.17, is entitled “Coordination of Tax Credits.” As in effect from enactment of the AMA until amended in 2007, it set forth the Incentive Credits in their order of priority as established by statute or by the Director. Paragraph (b) of the regulation provides as follows:
The tolal amount of the credits listed in this section that are allowed against the tax imposed pursuant to [N.J.S.A. 54U0A-5] for the tax year shall not exceed 50 percent of the tax liability otherwise due and shall not reduce the tax liability to an amount less than the statutory minimum provided in subsection (e) of [that statute].
[N.J.A.C. 18:7-3.17(b).]
Before the 2007 amendment, the regulation did not include the AMA credit in the priority list and did not specifically provide for the aggregation of the AMA credit with the Incentive Credits for purposes of the overall limit on credits. In the 2007 amendment, the Director inserted the AMA credit in the priority list as Item No. 15. As a result, paragraph (b) of the regulation then included the AMA credit in the aggregate fifty percent limit on all credits.
*533 Plaintiff contends that a careful reading of the language of N.J.S.A. 54:10A-5a(f) demonstrates that the Director’s amendment to N.J.A.C. 18:7-3.17 is inconsistent with, and contrary to, the statutory language. Specifically, plaintiff contends that the AMA credit was not intended to be included in the aggregate fifty percent limitation applicable to the Incentive Credits. Plaintiff acknowledges and concedes that the Director properly aggregated the Incentive Credits but contends that the AMA credit must be applied separately from those Credits. Plaintiff advances the following bases for its contentions:
1. The purpose of the AMA was to accelerate lax payments. The purpose of the AMA credit was to provide a methodology for refunding accelerated payments. Unlike the Incentive Credits, the AMA credit does not provide an incentive to business activity or investment and is similar to a credit provided to a taxpayer for prepaid installments against the taxpayer's ultimate tax liability.
2. Tax credits enacted close in time to the July 2, 2002 enactment of the AMA, namely the Effluent Equipment Tax Credit, enacted January 4, 2002 and effective July 1, 2002, and the Economic Recovery Tax Credit, enacted July 22, 2002 and effective June 30, 2002, expressly provided that the tax credit under each statute shall not “together with any other credits allowed by law” exceed fifty percent of the tax liability otherwise due. The statutory language limiting the AMA credit, contained in N.J.S.A. 54:10A-5a(f)(2), omitted the phrase “together with any other credits allowed by law.”
3. The Incentive Credits, under their respective specific statutory language, generally apply to the tax liability “otherwise due” under N.J.S.A. 54:10A-5. The AMA credit, however, is not calculated based on the tax “otherwise due” but is based on the excess of the AMA over the “tax computed” under N.J.S.A. 54-.10A-5. The “tax computed” under N.J.S.A. 54:10A-o is the tax remaining after deduction of the Incentive Credits. Therefore, the AMA credit should be applied in a manner consistent with its computation, that is, the credit should apply to CBT liability after deduction of the Incentive Credits.
The Director responds to plaintiff’s arguments by asserting that (1) her interpretation of N.J.S.A. 54:10A-5a(f) is entitled to deference from the court, and (2) her interpretation is consistent with the legislative history of the AMA. She also asserts that her interpretation is mandated by provisions of the Effluent Equipment Tax Credit and the Economic Recovery Tax Credit, and by the language of the Film Production Credit and the Handicap Persons Shelter Workshop Program (both enacted on January 12, 2006), because the statutory language creating each of these credits provides that the credit, together with “any other credits” allowed by law, “shall not exceed fifty percent of the tax liability *534 otherwise due.” The Director contends that, unless the AMA credit is aggregated with the Incentive Credits for purposes of applying the fifty percent limitation, the foregoing express statutory requirements would be violated.
I will discuss first the issue of court deference to administrative regulations. I then will address the parties’ respective contentions as to purpose of the AMA' and the proper interpretation of N.J.S.A. 54:10A-5a(f).
The degree of deference a court should accord to an administrative regulation was discussed recently by our Supreme Court in New Jersey Society for the Prevention of Cruelty to Animals v. New Jersey Department of Agriculture, 196 N.J. 366, 955 A.2d 886 (2008). There the Court articulated the following standards:
[I]n our review of an agency’s interpretation of statutes within its scope of authority and its adoption of rules implementing its enabling statutes, we afford the agency great deference. As we have explained: such deference is appropriate because it recognizes that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are particularly well equipped to read ... and to evaluate the factual and technical issues that ... rule making would invite. For this reason, w'e begin with a presumption that an agency’s regulations are both valid and reasonable and we place on the challenging party the burden of proving that the regulation violates the statute.
Nevertheless, if a regulation is inconsistent with the statute it purports to interpret, it will be invalidated. As W'e have held, an agency may not under the guise of interpretation ... give the statute any greater affect than its language allows. Thus, if the regulation is plainly at odds with the statute, the court will set it aside
[T]he deference w'e afford to agencies does not require abdication by the judiciary of its function to assure that agency rulemaking conforms with basic tenets of due process, and provides standards to guide both the regulator and the regulated.
|7d. at 385-86, 955 A.2d 886 (citations and internal quotation marks omitted).]
The same standards have been applied in decisions considering the Director’s interpretation of tax statutes. Koch v. Director, Div. of Taxation, 157 N.J. 1, 8, 722 A.2d 918 (1999); Richard’s Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 530, 659 A.2d 1360 (1995).
Based on the preceding authorities, the Director’s interpretation of the provisions of N.J.S.A. 54:10A-5a(f), as embodied in her 2007 amendment to N.J.A.C. 18:7-3.17, is entitled to defer *535 enee, provided that the interpretation is consistent with the statute. The Director asserts that her interpretation of N.J.S.A. 54:10A-5a(l) is in accord with the revenue-raising purpose of the Business Tax Reform Act. As set forth above, plaintiff asserts that the purpose of the AMA was primarily to accelerate payments of CBT, that the Legislature provided the AMA credit as a mechanism for refunding any accelerated payments, and, therefore, that the Director’s interpretation thwarts the purpose of the AMA credit.
The legislative purpose of the AMA can be gleaned from the legislative committee statements to the Business Tax Reform Act. The Assembly Budget Committee described the purpose of the legislation as follows:
The Bill updates the law to increase equity among business taxpayers and closes numerous loopholes that allow many profitable companies to reduce their taxable New Jersey income. Second, the Bill creates an alternative minimum assessment to measure a company’s economic activity in New Jersey in situations where the traditional “taxable income” measure is not a fair measure.
[Assembly Budget Committee Statement to A. 2501, with Assembly Committee amendments, June 27, 2002.]
The Senate Budget and Appropriations Committee statement contained virtually identical language. With specific respect to the AMA, the two committee statements contain the following identical language:
The bill implements an alternative minimum assessment (AMA) that will accurately measure a company’s economic presence in New Jersey and assure that companies enjoying the advantages of the New Jersey economy rail be required to satisfy a levy beyond the $200 minimum now in the law.
The AMA also assures a fair measure of support for State services from firms that exploit the State’s marketplace, but are exempt from a tax like the CBT pursuant to federal Pub. L. 86-272 ... This reform will effectively capture the value of the activities in New Jersey of out-of-state companies that currently pay no corporate income taxes in New Jersey.
Furthermore, if a company’s AMA exceeds its CBT in one year, the Bill allows the difference between the AMA and the CBT as a credit (that carries forward without limit) to reduce the company’s CBT liability in a future year. The bill limits the credit applied in any one year to an amount that does not reduce the CBT liability to less than 50 percent of the CBT otherwise due or less than the minimum franchise tax for the privilege period, which puts the AMA credit in line with the operation of other tax credits under the corporation business tax.
*536 [Assembly Budget Committee Statement to A. 2501, supra at 5-7; Senate Budget and Appropriations Committee Statement to S. 1556, supra at 5-6.]
The Director focuses on the concluding language of the above quotation from the Committee Statements, particularly the last sentence which states that the limitations on the credit will put the AMA credit “in line with the operation of other tax credits under the corporation business tax.” She asserts that this language provides authority for her determination that the AMA credit must be aggregated with the Incentive Credits for purposes of imposing a fifty percent limit on aggregate tax credits.
I conclude that the Director’s interpretation of N.J.S.A. 54:10A-5a(f) is consistent with the legislative history of the AMA and the AMA credit. The purpose of the Business Tax Reform Act, and the AMA as part of that Act, was not, as argued by plaintiff, merely or primarily to accelerate revenue. The purpose, as reflected in the Committee Statements quoted above, was the generation of additional revenue from corporations that, in the Legislature’s view, were not paying their fair share of the tax burden. Plaintiffs interpretation of the application of the AMA credit would contravene this purpose because plaintiffs interpretation could result in the reduction of a taxpayer’s CBT liability for a particular year to twenty-five percent of the liability that would be “otherwise due.” For example, if CBT liability were reduced by fifty percent as a result of the application of one or more of the Incentive Credits, under plaintiffs interpretation of the AMA credit the taxpayer’s liability could be reduced by an additional fifty percent. Such an approach is inconsistent with the revenue-raising purpose of the Business Tax Reform Act, and with the concept that the AMA credit would be “in line with the operation of other tax credits under the corporation business tax” as expressed in the Committee Statements.
As described above, plaintiff argues that, because the calculation of the available AMA credit is based on the difference between the AMA and the CBT after deduction of the Incentive Credits, the AMA credit should be applied after the Incentive Credits. In making this argument, plaintiff disregards the differences in the terminology used in the two subparagraphs of N.J.S.A. 54:10A- *537 5a(f). Subparagraph (1) provides that the amount of the available credit is to be calculated based on the “tax computed” in N.J.S.A. 54:10A-5. As interpreted by the Director, “tax computed” means CBT after deduction of Incentive Credits. However, Subparagraph (2), after authorizing application of the credit calculated in Subparagraph (1) against the “tax computed” under N.J.S.A. 54U0A-5, changes terminology when defining the limits, particularly the fifty percent limit, on the portion of the available credit that may be applied in a particular tax year. The limitation language in Subparagraph (2) does not refer to the “tax computed” under N.J.S.A. 54:10A-5 but to the tax “otherwise due” under N.J.S.A. 54:10A-5. The phrase “otherwise due” also appears in the Incentive Credits (see Table A).
The shift in the statutory terminology from “tax computed” in Paragraph (f)(1) to tax “otherwise due” in Paragraph (f)(2) reflects a legislative intent that the amount of the available AMA credit usable in each year should be determined in the same manner as the Incentive Credits, that is, based on aggregating the AMA credit with the Incentive Credits. Therefore, the Director’s 2007 amendment to N.J.A.C. 18:7-3.17, expressly requiring such aggregation, constitutes a correct interpretation of N.J.S.A. 54:10A-5a(f). Plaintiff, in effect, has accepted this interpretation by conceding that aggregation of the Incentive Credits is proper under their respective statutory provisions for purposes of the fifty percent limitation, even though, as set forth in Table A, the statutory language for most of the credits does not include the phrase “together with any other credits allowed by law” or other express aggregation provisions.
Aggregation of the AMA credit with the Incentive Credits also is necessitated by the language of the statutes creating the Effluent Equipment Tax Credit, Economic Recovery Tax Credit, Film Production Credit, and Handicapped Person Workshop Program. Each of these statutes specifically provides that the credit it allows shall not, when aggregated with “any other credits allowed” against the tax imposed by N.J.S.A. 54H0A-5, exceed fifty percent. The plain meaning of the phrase “any other credits *538 allowed” is to incorporate both the Incentive Credits and the AMA credit.
Plaintiff argues that, if a taxpayer has available one or more of the Incentive Credits, aggregating the AMA Credit with those Incentive Credits would result in the reduction of the effective percentage of AMA Credit to below fifty percent of CBT liability and possibly reduce the effective percentage to zero. Theoretically, the amount of the AMA credit usable for a particular privilege period could be reduced by the Incentive Credits. However, any unused portion can be carried forward so that the credit is not lost. Plaintiffs argument as to a reduction in the usability of the AMA credit also could be made with respect to the aggregation of the Incentive Credits. If an Incentive Credit, having a higher priority, should reach the fifty percent maximum, then any other credits with lower priority could be rendered useless. Notwithstanding this similar result, plaintiff has acknowledged and agreed that the aggregation of the Incentive Credits is appropriate.
Based upon the foregoing analysis, I conclude that the Director’s interpretation of the AMA credit as reflected in the 2007 amendment to N.J.A.C. 18:7-3.17 should be sustained, not simply because the Director’s interpretation is entitled to deference, but, more importantly, because the Director’s interpretation reflects a reasonable and correct reading of the statutory language and accurately reflects the legislative policy, intent, and purpose in enacting the AMA and the AMA credit.
Plaintiff asserts that, even if the Director’s interpretation of the AMA credit is accepted by the court, the interpretation must be applied only prospectively because the 2007 amendment to N.J.A.C. 18:7-3.17 constitutes a change from prior policy. In support of its argument, plaintiff relies on Sorensen v. Director, Division of Taxation, 184 N.J.Super. 393, 2 N.J.Tax 470, 478, 446 A.2d 213 (Tax 1981) which identifies the following standards for determining whether a regulation should be given retroactive effect:
(1) comparison of the public interest with the private interest that would he overturned by the regulation; (2) whether and if so, how, the conduct of the taxpayer w'ould have differed if the rule w'ere in effect; (3) the extent of reliance on *539 the former rule and the burden that would be suffered if that relance were frustrated.
LId. at 478, 446 A.2d 213 (citations omitted).]
Plaintiff argues that, in reliance on the pre-2007 version of N.J.A.C. 18:7-3.17, corporate taxpayers may have made investments intended to generate Incentive Credits which have become useless after the Director’s amendment to the regulation.
Plaintiffs argument is without merit. Plaintiff itself is not a taxpayer that could have made use of the Incentive Credits. Plaintiff, therefore, has no reliance interest whatsoever. To the extent plaintiff asserts possible reliance by one or more of its members, or others, that assertion is pure speculation unsupported by any certification or other evidence that any such reliance occurred. The argument assumes that a taxpayer, in deciding whether to invest in its business or in capital equipment, would make careful calculations of the precise amounts of Incentive Credits available to it, the priority of the credits, and their usability, including an analysis of the impact of the AMA credit, even though the amount and applicability of the AMA credit could not be determined until the end of the taxpayer’s privilege period. The assumption is unreasonable on its face.
In any event, the 2007 amendment to N.J.A.C. 18:7-3.17 does not reflect a change in the Director’s policy with respect to the application of the AMA credit. As discussed above, from the inception of the availability of the credit, the Director issued CBT-100 tax return forms and Form 315, both of which incorporated an interpretation of the credit identical to the interpretation in the 2007 amendment. The amendment, therefore, simply set forth explicitly what previously had been implicit in the method of calculation and application of the AMA credit pursuant to the CBT-100 form and Form 315.
As the preceding discussion demonstrates, under standards (2) and (3) set forth in Sorensen, retroactive application of the 2007 amendment to N.J.A.C. 18:7-3.17 is not required. As to standard (1), plaintiff has failed to demonstrate any private interest that would be overturned under the 2007 amendment, even if that amendment constituted a change in the interpretation of the AMA *540 and AMA credit. Consequently, the public interest in collection from each corporate taxpayer of its fair share of the tax burden in New Jersey, as intended by the Legislature in enacting the Business Tax Reform Act, far outweighs any private interest that plaintiff has demonstrated or, apparently, can demonstrate.
The retroactive application of regulations was expressly sanctioned by our Supreme Court in Richard’s Auto City, Inc., supra, 140 N.J. 523, 659 A.2d 1360, where the Court stated as follows:
We agree with the Tax Court and find that the regulation applies retroactively to the effective date of the statute. As a reasonable interpretation of the statute, the regulation applies as the statute applies-“[lo] any taxable year ending after June 30,1984.” As noted by the Tax Court, “an administrative regulation ‘does not, and could not, alter the statute. It is no more retroactive in its operation then is a judicial determination construing and applying a statute to a case at hand.’ ” [Id. at 543, 059 A.2d 1360 (citations omitted).]
In her 2007 amendment to N.J.A.C. 18:7-3.17, the Director simply has articulated an interpretation of N.J.S.A. 54:10A-5a(f) that was in effect from the date of enactment and implementation of the statute. To apply the 2007 amendment only prospectively would suggest that it represents a change in the application and interpretation of the statute, which it does not.
Based on the analysis and discussion above, I conclude that the 2007 amendment to N.J.A.G. 18:7-3.17 reflects a proper interpretation of N.J.S.A. 54:10A-5a(f) and, therefore, that plaintiff is not entitled to relief with respect to the regulation. Consequently, I deny plaintiffs motion for summary judgment and grant the Director’s motion.
*541 [[Image here]]
*542 [[Image here]]
*543 [[Image here]]
*544 [[Image here]]
*545 [[Image here]]

 The Director has not challenged plaintiff's standing to prosecute this appeal or this court's jurisdiction to hear the appeal. Plaintiff appears to have standing. See, e.g., Chamber of Commerce of the U.S.A. v. State, 89 N.J. 131, 141, 445 A.2d 353 (1982) (quoting from Crescent Park Tenants Ass’n v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107-08, 275 A.2d 433 (1971)). As to jurisdiction, under i?. 2:2-3(a)(2) the Appellate Division has jurisdiction to review the validity of an administrative regulation "excepting matters prescribed by R. 8:2 (tax matters)." Rule 8:2(a) confers "initial review jurisdiction" on the Tax Court with respect to "the promulgation of any ... regulation of .. the Director of the Division of Taxation...."

 The purpose of the AMA is discussed at length below.